477 P.2d 834

**STATE of Idaho ex rel. B. CHILD, Commissioner Department of Public Assistance, Plaintiff-Respondent,**

v.

**Grace CLOUSE, Defendant-Appellant.**

No. 10565.

Supreme Court of Idaho.

Dec. 11, 1970.

Kenneth F. Clarke, Blackfoot, for defendant-appellant.

Richard C. Russell, Asst. Atty. Gen., Boise, Mary Durham Adams, Idaho Falls, for plaintiff-respondent.

SPEAR, Justice.

This is an appeal from an order of the Butte County District Court affirming an order of the Butte County Probate Court denying the petition of Grace Clouse seeking custody of four of her five sons, and granting the petition of the Department of Public Assistance seeking the termination of the parent-child relationship existing between Mrs. Clouse and her four younger sons.

On September 29, 1965 William and Grace Clouse, husband and wife, were incarcerated in the Butte County jail charged with burglary. Grace Clouse was subsequently released and William Clouse was convicted and served a one-year sentence in the Idaho State Penitentiary. On October 5, 1965 the Department of Public Assistance petitioned the Butte County Probate Court for an order granting it legal custody of the five sons of Grace Clouse. The court granted the petition, and on November 23, 1965, the department took custody of the Clouse children, including: David, age 12; Richard, age 7; Robert, age 5; Mike, age 4; and Ira, age 7½ months. The children were then placed in foster homes.

Since that time, Grace Clouse has waged a continuous legal battle to effect the return of her children to her. In May 1966 she filed a petition in the probate court for a rehearing on the decree which denied her custody of her five sons. From a denial of this petition, she appealed to the district court which affirmed the probate court's decision.

In December 1966 the Department of Public Assistance petitioned for a termination of the parent-child relationship between Mrs. Clouse and her five sons. The probate court granted the petition, but upon appeal, the district court reversed it for a deficiency in the pleadings.

In September 1967, after divorcing her husband, Mrs. Clouse again petitioned for a rehearing as to the custody decree in the probate court. With its answer to her petition, the Department of Public Assistance included a petition to terminate the parent-child relationship between Mr. and Mrs. Clouse and their five sons. The probate court granted the Department's petition as to the four younger Clouse boys, and granted custody of David, the oldest, to Mrs. Clouse. From that part of the decision terminating her relationship as a parent to her four younger sons, Mrs. Clouse appealed to the district court which affirmed the probate court's decision in a de novo hearing on the ground that the best interest of the parent and the children required a termination of the parent-child relationship. From that decision, Mrs. Clouse perfected her appeal to this court.

The facts upon which the district court relied in making its decision are as follows:

Prior to their arrest in 1965, William and Grace Clouse led a rather itinerant life, moving their children from state to state. Mr. Clouse, a chronic alcoholic with a defensive, rebellious personality and a sub-

normal I.Q., had a difficult time obtaining and keeping a job for more than a short period. He had a long criminal record, and because of his frequent arrests and jail terms, the family suffered both economically and socially. Due to her below average I.Q. and her lack of education, Grace Clouse was incapable of obtaining any kind of skilled work to ameliorate the strained financial condition of the family. As a result, they were frequently out of food, clothes, and money, and were forced to obtain state assistance whenever possible. Mrs. Clouse suffered two miscarriages during this time, and gave birth to a total of seven children. Of those seven, one died of a kidney disease at the age of five years, one was voluntarily released for adoption, and the other five, in a malnourished and unkempt condition at the time of the arrest of their parents, were placed in foster homes. In February 1966, a daughter was born to Mrs. Clouse and she has always retained custody of this child.

As wards of the Department of Public Assistance, the children were separated and placed in the homes of different families which were approved by the Department. Since their placement in these foster homes, the Clouse children, with the exception of the oldest child, David, who has been returned to his mother, have adapted to their new lives extremely well. In each instance the children have become strongly attached to their foster parents, and the latter have developed a parental love for the children. The foster parents have indicated a desire to adopt the children, and the children have stated that they wish to live with their foster parents and do not wish to return to their natural mother.

After his release from the Idaho Penitentiary in 1966, William Clouse began drinking heavily again. In 1967 he was arrested three different times in three different cities for intoxication. While intoxicated he called upon the foster parents of some of his children and abused them with name calling and threats upon their lives. Although Grace Clouse divorced her husband in 1967, he has written to her informing her that when she gets the children back, he will return to her. Mrs. Clouse testified that despite her divorce from him, Mr. Clouse was a "good husband" and that if he quit his drinking and obtained a job, she would remarry him.

Testimony by neighbors of Mrs. Clouse as to her present capabilities as a housekeeper and mother to the two children in her custody was generally favorable. However, the local director of the Department of Public Assistance and the case-worker who worked with Mrs. Clouse regarding her custody problems testified in essence that although she was doing reasonably well in rearing the two children presently in her custody, she is not capable of rearing a larger family. Further, that although she has divorced William Clouse, the latter remains in close contact with her and would definitely adversely influence the children's lives if they were returned to their mother.

In her appeal from the district court decision terminating the parent-child relationship, Mrs. Clouse cites numerous assignments of error, the first of which is that the evidence fails to support the judgment of the court.

█ This is the first occasion in which a lower court's decision terminating the parent-child relationship under I.C. § 16–2001 et seq., has been before us on appeal. Cases involving the welfare of children in which we are asked to reverse or modify the lower court's decision regarding the custody of the children always present a very difficult problem. Moreover, in the case at bar that problem is magnified greatly since we are not concerned with a temporary denial of custody of children to their mother, but with the complete severance of the parent-child relationship. The gravity of the latter consequence may not be denied nor the fact that severance of the parent-child relationship should be avoided unless it is the only alternative found consistent with the best interests of the children and the parents.

896

■ Appellant contends, and we readily agree, that parental affection is a priceless advantage. However, a child may not live on parental affection alone. In addition to love and affection and the satisfaction of his physical needs, a child requires moral guidance and training to allow him to grow into a well-adjusted, normal adult. The fact that Mrs. Clouse wants her children and has waged a continuous legal battle to effect their return to her does not necessarily mean that she can and will provide an adequate home environment for them. It is true that as a parent Mrs. Clouse has a natural right to the custody of her children, but she does not have an absolute legal right to their custody. Freund v. English, 83 Idaho 140, 358 P.2d 1038 (1961); Nelson v. Standefer, 87 Idaho 83, 390 P.2d 838 (1964); Blankenship v. Brookshier, 91 Idaho 317, 420 P.2d 800 (1966). Furthermore, such right may be forfeited and lost, and her relationship with her children as a parent terminated where the children are abandoned, neglected, abused, or the court finds that the best interest of the parent and child requires the termination of the relationship. I.C. § 16–2005. In the case at bar the court terminated the parent-child relationship on the latter grounds. Since this appeal questions the sufficiency of the evidence in support of that finding and judgment by the lower court, the record must be examined by this court in a light most favorable to that judgment. Olsen v. Hawkins, 90 Idaho 28, 408 P.2d 462 (1965); Jackson v. Blue Flame Gas Company, 90 Idaho 393, 412 P.2d 418 (1966); Clayton v. Jones, 91 Idaho 87, 416 P.2d 34 (1966).

The record reveals that William Clouse has been arrested for intoxication numerous times since his release from the Idaho Penitentiary, that he has called upon the probate judge, the employees of the Department of Public Assistance, and the foster parents of some of his children and abused some of them with name-calling and threats upon their lives; that after his visits to the foster homes, one child became so emotionally upset, nervous, and fearful that he had to be placed in a new foster home, and the other child began imitating his father, threatening to kill the natural children of the foster parents and becoming so unruly that he had to be returned to his mother; that William Clouse has informed Mrs. Clouse that he will return to her when she gets the children back and has kept in close contact with her; that Mrs. Clouse testified that she would remarry her ex-husband if he quit drinking and obtained a job, and that in her opinion, he had presently quit drinking and was working steadily; that the children have now lived with foster parents for almost five years; that the foster parents have given the children good homes and would like to adopt them; that the children wish to remain with their foster parents and do not wish to return to Mrs. Clouse; and that the professional personnel of the Department of Public Assistance who have worked closely with Mrs. Clouse and her children for several years have advised that she is not capable of providing her four younger sons with the moral guidance, training, and support which they so desparately need, and that in the best interest of the mother and her children, the parent-child relationship should be terminated.

■ Although we firmly believe that the family relationship should be preserved and strengthened whenever reasonably possible, we also recognize that in certain cases compelling reasons require an exception to this rule. After viewing the evidence in the case at bar, both the probate court and the district court concluded that this case constituted such an exception and that termination of the parent-child relationship was required. These courts had the opportunity to see and hear the witnesses, to observe their demeanor, to gauge their credibility and character, and thus were in much better position than this court to weigh and evaluate the evidence. As we have so often held, the trial judge is the arbiter of conflicting evidence and his determination of the weight, credibility, inferences, and implications thereof is not to be supplanted by this court's impressions

or conclusions from the written record. Sellars v. Sellars, 73 Idaho 163, 248 P.2d 1063 (1952); Angleton v. Angleton, 84 Idaho 184, 370 P.2d 788 (1962); Jackson v. Blue Flame, supra; Meridian Bowling Lanes, Inc. v. Brown, 90 Idaho 403, 412 P.2d 586 (1966). The findings and judgment of the trial court that the best interests of the parent and children involved in this case require a termination of the parent-child relationship are fully supported by substantial, competent evidence and are therefore binding and conclusive upon this court. Olsen v. Hawkins, 90 Idaho 28, 408 P.2d 462 (1965); White v. Boydstun, 91 Idaho 615, 428 P.2d 747 (1967); Leonardson v. Moon, 92 Idaho 796, 451 P.2d 542 (1969).

Mrs. Clouse seeks reversal of the district court decision on the grounds that the district court lacked jurisdiction to conduct a hearing on the petition for termination of the parent-child relationship and to render a decision in the case since no report had been filed by the Department of Public Assistance as required by I.C. § 16–2008, and since the previous custody order granting custody of the Clouse children to the Department had never been renewed as required by I.C. § 16–1637.

■ I.C. § 16–1637, a section of the Idaho Child Protective Act, grants the probate court power to vest legal custody of a child found to be within the purview of the act with the Department of Public Assistance. This section further provides that such a decree shall be binding for two years from the date entered and is renewable on petition by the Department. In this case, the original order granting custody of the Clouse children to the state was entered by the probate court November 23, 1965. Mrs. Clouse's petition for rehearing was filed September 29, 1967. The answer to Mrs. Clouse's petition and combined petition for termination of parent-child relationship was filed by the Department of Public Assistance October 16, 1967. The Department's petition for termination of the parent-child relationship was filed with-

in two years of the original order. There was no need to enter any other petition to continue the custody order because Mrs. Clouse's parental rights to the children, and also her right to custody of them, was in the process of being litigated before the expiration date of the original order. Filing the petition for termination of parent-child relationship rendered any other petitions unnecessary.

■ As to Mrs. Clouse's next assignment of error, we doubt that the requirement that a report be filed with the petition for termination of parent-child relationship is jurisdictional. However, even assuming that it is a jurisdictional requirement for the Department to have submitted a report with its petition, no reversible error occurred here. All the information required to be in the report by I.C. § 16–2008 was before the court in this case. In its answer and petition for termination of parent-child relationship, the Department set out some of the facts required by I.C. § 16–2008. Interrogatories taken from Mary van Ende, the District Director of the Department of Public Assistance, adequately supplied the court with the remaining information specified to be obtained in I.C. § 16–2008. While the better procedure is without doubt for the Department to prepare such a report, no reversible error occurred by its failure to submit a report in this case.

■ Mrs. Clouse also contends the court erred in not reciting in its order terminating the parent-child relationship the findings and jurisdictional findings upon which the court's order was based. The order of the court, however, specifically incorporated by reference the findings of fact contained in the court's Memorandum Decision. Also, the court stated in its order as follows:

"This matter came on regularly for hearing on January 16, 1969, before the Honorable Willard C. Burton, one of the Judges of the above-named Court, pursuant to an appeal under Chapter 20,

Title 16, Idaho Code, from the Order of the Acting Butte County Probate Court, and pursuant to the notice of this Court." By virtue of I.C. § 16–2014, which provides that an appeal may be taken to the district court from an order of the probate court granting a termination of the parent-child relationship, the court had jurisdiction of the case. Since the court had jurisdiction, and the court's statement sufficiently identified the jurisdiction-granting statute so as to prevent misconceptions by the parties, no reversible error occurred.

■ In her next assignment of error, Mrs. Clouse contends that since the respondent Department struck from its petition for termination of the parent-child relationship the grounds of mental illness or deficiency under I.C. § 16–2005(d), the court erred in stating in its conclusions of law that "(n)either parent was or is mentally capable of assuming the responsibility of raising a large family without outside assistance," and in relying thereon in making its decision.

The court's conclusory statement as to Mrs. Clouse's capability was based on the court's Finding of Fact Number 8 in which the court found:

"Back in 1965, Grace Clouse was 33 years of age. She was a lady of dull-average intelligence. She had an I.Q. of 87. She was not socially adept. She was not mentally ill, mentally retarded nor emotionally upset. * * * Due to her own lack of education she is incapable of teaching her children or of coping with the problems of society herself. Due to her low mental ability and her lack of education she is incapable of obtaining any kind of skilled work. She is incapable of accepting the responsibility of raising a large family without help. * * * *"

The court's conclusions of law do not refer to I.C. § 16–2005(d) nor do they state that Mrs. Clouse was "mentally ill" or "mentally deficient," the terms used in

the statute. Instead, the court found that Mrs. Clouse was not mentally ill nor mentally retarded, but that because of her low mental ability and lack of education she was not "mentally capable of accepting the responsibility of raising a large family without outside assistance." Such findings and conclusions are supported by the record, are relevant and material to the court's decision of the best interest of the parent and the children, and were thus properly made and considered by the court in making its decision.

■ In assignments of error numbers 16, 17, 18 and 19, Mrs. Clouse contends the court erred in making any findings of fact concerning William Clouse and the foster parents of the Clouse children. She argues in support of such assignments that such matters were irrelevant to the issue of whether or not the parent-child relationship should be terminated between her and her children, and, therefore, that the court's decision should have not been based in whole or in part on such findings of fact.

I.C. § 16–2008 provides as follows:

"Upon the filing of a petition, the court shall direct, in all cases where written consent to termination has not been given as provided in this act, that an investigation be made by an authorized agency and that a report in writing of such study be submitted to the court prior to the hearing, except that where an authorized agency is a petitioner, either in its own right or on behalf of a parent, a report in writing of the investigation made by such agency shall accompany the petition. * * * The court may order additional investigation as it deems necessary. The social study shall include the circumstances of the petition, the investigation, the present condition of the child and parents, proposed plans for the child, and such other facts as may be pertinent to the parent and child relationship, and the report submitted shall include a recommendation

and the reasons therefor as to whether or not the parent and child relationship should be terminated. * * *"

This section also provides that the purpose of the investigation is to aid the court in making disposition of the case and shall be considered by the court in making its decision. Thus, the findings of fact regarding the children's progress in adapting to their foster homes, the actions of William Clouse since the children were taken into custody, and his contacts with them and influence on them were proper factors for consideration by the court in making a decision regarding the best interest of Mrs. Clouse and her children.

█ Mrs. Clouse also assigns as error action taken by the district court in calling her son Richard Clouse as a witness, questioning him and not allowing her counsel to cross-examine the boy. Further, Mrs. Clouse contends that the court erred in interviewing her children in private without keeping a record and basing its findings partially on these interviews.

I.C. § 16-2009 provides as far as is relevant here that the hearing may be conducted in an informal manner and that stenographic notes or mechanical recording of the hearing shall be required. Taken alone, this section of the Idaho Code would seem to indicate that examination of the Clouse children by the district judge in private with no record having been kept was error. However, we are mindful that one purpose of I.C. § 16-2001 et seq. is the promotion of the welfare of the children of the state. The children examined by the district judge ranged in age from three to eleven years old at the time of the hearing. It is difficult to perceive that it would have been in the best interest of the welfare of these young children to have subjected them to such a stressful situation as being questioned on the stand by adults in the presence of other strangers and their parents. This court criticized a district court for allowing an eight year old girl to be examined on the stand in Krieger v. Krieger, 59 Idaho 301, 81 P.2d 1081 (1938), stating:

"* * * It should be observed just here with this kind of examination of an 8-year-old child, in the presence of its parents, is hardly fair to the child. If such an examination is thought proper at all, it should take place out of the presence and hearing of the parents so as to save the child the embarrassment and possible fear of expressing a preference between the father and mother." Id. at 306, 81 P.2d at 1083.

It is a very similar sort of fear and embarrassment that needed to be avoided here, that which would almost certainly have been occasioned by requiring the children to express a preference between their natural mother and foster parents. It is for these reasons that this court has held that it is in the discretion of the trial judge to interview children outside the presence of parents in divorce custody proceedings. Lawson v. Lawson, 87 Idaho 444, 394 P.2d 1008 (1964); Stewart v. Stewart, 86 Idaho 108, 383 P.2d 617 (1963); Tobler v. Tobler, 78 Idaho 218, 299 P.2d 490 (1956). Because of the similarity between the custody question in divorce proceedings and termination of parent-child relationship cases, the reasoning applicable to one also applies to the other. The district judge did not err in alone interviewing the Clouse children on the stand and in his chambers.

We have reviewed the remaining assignments of error cited by Mrs. Clouse and find no reversible error therein.

The judgment of the district court is affirmed. No costs allowed.

McFADDEN, C. J., and McQUADE, DONALDSON and SHEPARD, JJ., concur.