638 P.2d 717
**In the Matter of the Appeal in MARICO-PA COUNTY JUVENILE ACTION NO. JD–561.**

No. 1 CA–JUV 146.

Court of Appeals of Arizona,
Division 1,
Department A.

March 10, 1981.

Review Granted April 7, 1981.

Nile B. Smith, Phoenix, for appellant natural father.

Robert K. Corbin, Arizona Atty. Gen. by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for Arizona Dept. of Economic Security.

Jane Bayham-Lesselyong, Phoenix, for minor.

## OPINION

McFATE, Retired Judge.

The sole issue presented on this appeal is whether a father was denied due process of law in violation of the Fourteenth Amendment to the United States Constitution by being refused the right to be present and to confront and cross-examine his ten and one-half year old daughter who was interviewed by the judge in chambers during a dependency hearing involving the child.

On December 18, 1979, a dependency petition was filed in the Maricopa County Juvenile Court alleging that appellant's daughter was a dependent child, and requesting

the court to make such orders regarding her custody, care and support as the child's welfare and the interests of the State may require. The petition alleged that appellant had kissed his daughter on the mouth using his tongue, fondled her breasts as they developed, and fondled her genital area; that the child had complained that her father "treats me like a wife"; that her mother is institutionalized at Arizona State Hospital; and that she is in fear of her father, who has a record of physical threats to protective service workers.

Appellant's position was that everyone involved had blown a normal parent-child relationship out of proportion, and that the reported sexual contacts were exaggerations.

A.R.S. § 8–201(10), insofar as it applies to this case, defines "dependent child" as follows:

"Dependent child" means a child who is adjudicated to be:

(a) In need of proper and effective parental care and control and has no parent or guardian, or one who has no parent or guardian willing to exercise or capable of exercising such care and control.

The minor's appointed counsel filed a motion with the juvenile judge requesting that the child not be required to testify at the dependency proceeding as to the details of the sexual molestation, but that in the event such testimony was necessary to prove dependency and protect the child from being returned to her father, that she be interviewed in chambers by the judge, with her therapist present, pursuant to rule 19, Arizona Juvenile Court Rules of Procedure, and that all parties and their attorneys be excluded.

Grounds for the motion were set forth in detail and may be summarized as follows: that the child had been under tremendous stress throughout the past few months; she was reluctant to discuss the details of the sexual abuse even with her female therapist (with whom she had currently developed a relationship of trust and confidence and in whose presence the child would likely be more willing to talk); and that it would cause her unnecessary emotional distress to testify in a courtroom or in chambers before her father or the attorneys in the case. The mother was apparently not present or represented at the hearing.

The motion was granted, over the objection of counsel for appellant, and thereafter the judge interviewed the child in chambers in the presence of the social worker and the official court reporter who reported the conversation verbatim. At the conclusion of the dependency hearing, the court made specific findings that the allegations of the petition concerning the father's behavior towards the child were true, found her to be dependent, and made her a ward of the court with provisions for foster home care.

■ Appellee contends that the *in camera* procedure employed by the judge is sanctioned by rule 19, Arizona Juvenile Court Rules of Procedure, which reads as follows:

In any hearing pursuant to these rules, the general public may be excluded and only such persons admitted as have a direct interest in the case. *The court may further excuse any party other than the child from any hearing*, except that the child may be excluded in matters not involving the commission of an act which would be the violation of the criminal law if committed by an adult and the court may exclude the child at the request of the child's attorney. (emphasis added)

It is doubtful that this rule specifically authorizes a court to exclude a party without his consent. The word "excuse" is not synonymous with "exclude". The former implies permission to leave, the latter refusal to admit. The rule, however, does not categorically prohibit the court from excluding a party, nor are there any words employed which would solve the complex due process issue raised on this appeal. It also is not clear that the rule applies to private *in camera* interviews as distinguished from formal hearings. There are no Arizona decisions holding that the procedure involved in this case *ipso facto* violates due process. Similar interviews have been

held proper where no formal objection was voiced. *Bailey v. Bailey,* 3 Ariz.App. 138, 412 P.2d 480 (1966). Because of the uncertainty of the reach of the rule and the absence of governing Arizona case law, we hold that rule 19 does not prevent a judge from excluding a party from a private *in camera* interview with the child in a dependency hearing.

Appellant does not pursue his appeal on the basis that the evidence is insufficient to sustain the trial court's decision. Indeed, he has not filed with this court any transcript of the testimony presented at the dependency hearing or of the judge's conversation with the minor child in chambers. In *In re Maricopa County Juvenile Action No. J–74449 A,* 20 Ariz.App. 249, 511 P.2d 693 (1973), this court held that a party who questions the sufficiency of evidence to support a finding of dependency has the burden of including the transcript of testimony in the record so as to provide a basis for review and in the absence of such transcript, this court will presume the evidence sustains the court's findings and will affirm. We likewise presume that the evidence in this case is sufficient to sustain the finding of dependency, and move on to the issue of denial of due process of law which is the sole issue on which appellant relies for reversal.

■ The right to raise one's children is fundamental, and a proceeding by the state to deprive a person of that right permanently or temporarily must conform in its procedural aspects with the notion of due process embodied in the Fourteenth Amendment. *In the Matter of Appeal in Pima County Juvenile Action J–46735 v. Howard,* 112 Ariz. 170, 540 P.2d 642 (1975); rule 16, Arizona Juvenile Court Rules of Procedure; U.S.Const. amend. XIV. *See also Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

It is important therefore to first understand the legal concept inherent in the term "due process of law" and in particular as applied to dependency proceedings, and then proceed to determine whether the court's action unfairly deprived appellant of this fundamental right.

In *Crouch v. Justice of Peace Court of Sixth Precinct,* 7 Ariz.App. 460, 465–466, 440 P.2d 1000, 1005–1006 (1968), the essence of the term "due process" was described as follows:

There is probably no more nebulous and indefinable concept in the law than "due process of law". Generally speaking, the denial of due process is a denial of "fundamental fairness, shocking to the universal sense of justice". *Kinsella v. United States ex rel. Singleton,* 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960).

*See also State v. Maldonado,* 92 Ariz. 70, 373 P.2d 583 (1962).

■ Procedural due process does not require the application of a particular standard or categorical set of rules or criteria or a particular order of proof or mode of offering evidence. It is flexible. Requirements may differ in different types of cases. *Goldberg v. Kelly,* 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970); *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971); *Stanley v. Illinois, supra; Ray v. Rambaud,* 103 Ariz. 186, 438 P.2d 752 (1968); *Hart v. Bayless Investment & Trading Co.,* 86 Ariz. 379, 346 P.2d 1101 (1959).

Justice Frankfurter in his concurring opinion in *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123 at 162–163, 71 S.Ct. 624, at 643–644, 95 L.Ed. 817 (1951), said:

"[D]ue process", unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.... Due process is not a mechanical instrument. It is not a yardstick. It is a process. It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process.

\*　　\*　　\*　　\*　　\*　　\*

...The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alterna-

tives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, the balance of hurt complained of and good accomplished—these are some of the considerations that must enter into the judicial judgment.

 The various interests must be considered, weighed and adjusted before determining the safeguards essential to due process. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). In child custody and dependency proceedings, the court's first concern, and indeed the common concern of all parties, should be the current and future welfare of the child. *In re Pima County Juvenile Action No. J–31853*, 18 Ariz.App. 219, 501 P.2d 395 (1972); *Clifford v. Woodford*, 83 Ariz. 257, 260, 320 P.2d 452, 455 (1957).

Having determined that the parent-child relationship is fundamental and thus protected by due process, it is necessary to take the second analytical step of ascertaining what procedural safeguards are required in order to comport with due process. This determination depends upon the nature of the proceeding and the rights that may possibly be affected. Weighing the competing interests has long been the test employed to determine the procedural formalities needed to ensure due process of law. In a neglect proceeding it is necessary to consider all three of the interests involved: those of the parent, the state, and the child. The welfare of the child, however, should be a prime consideration of the juvenile court in such cases. (footnotes omitted)

Singleman, *A Case of Neglect: Parens Patriae versus Due Process in Child Neglect Proceedings*, 17 Ariz.L.Rev., pages 1055, 1064 (hereinafter "Singleman").

 In proceedings of this nature, the state's concern is generally to assure that children are protected from abuse and are brought up as well adjusted, law abiding citizens. *In Interest of Loomis*, 195 Neb. 552, 239 N.W.2d 266, 269 (1976); 43 C.J.S. Infants § 5, p. 66. The parent's interest is

to preserve the on-going parent-child relationship. Reciprocal to and often conflicting with the parental interest, the child has a right to proper and effective parental care and control, physical security, *Hernandez v. State ex rel. Arizona Department of Economic Security*, 23 Ariz.App. 32, 530 P.2d 389 (1975), and, we add, freedom from reasonably avoidable emotional anguish and trauma.

Courts have shown understandable concern for the welfare of children placed in the role of witnesses in custody disputes.

> We recognize that a child, particularly of young and tender years, could be subjected to severe psychological trauma because of a custody case. We are confronted, therefore, with an attempt to balance the right of the parents to present evidence as to what they deem to be in the best interest of the child as against possible severe psychological damage to the child.

*Marshall v. Stefanides*, 17 Md.App. 364, 302 A.2d 682, 685 (1973).

> The children examined by the district judge ranged in age from three to eleven at the time of the hearing. It is difficult to perceive that it would have been in the best interest of the welfare of these young children to have subjected them to such a stressful situation as being questioned on the stand by adults in the presence of other strangers and their parents.

*State v. Clouse*, 93 Idaho 893, 477 P.2d 834, 840 (1970).

> The possibility of prolonged emotional, mental and perhaps physical adverse reaction to the proposed confrontation should not be ignored. Moreover, the events which preceded the hearing in this case caused considerable damage to whatever filial relationship existed between father and daughter. In the event a child is adjudicated dependent, it has a right to restoration of a normal parental relationship if the parent's fitness can be restored. A.R.S. §§ 8–503(5) and 8–515. The appellant's proposed face-to-face confrontation could easily have further damaged whatever ties remained, and made restoration of a normal parent-child

relationship virtually impossible, even with the therapy recommended by the experts.[1]

The hearing judge obviously felt that in the search for truth, he should verify the reported hearsay statements attributed to the child by various witnesses and that the presence of the parties with or without counsel would frustrate his efforts and would not be in the best interests of the child.

■ Appellant had an interest in cross-examining his daughter to establish, if he could, the unreliability of her accusations against him. He takes the position that the court should conclusively presume that any denial of the right of cross-examination is inherently unfair and violative of due process. Under this approach, any inquiry relative to equitable procedural limitations which may be necessary to balance conflicting rights and interests of the state, parent and child become immaterial. This argument is too simplistic. The road of due process is not one-way. We conceive it to be the court's duty to make such inquiry in order to determine:

> [T]he precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, the balance of hurt complained of and good accomplished.

*Joint Anti-Fascist Refugee Committee v. McGrath, supra,* 341 U.S. at 163, 71 S.Ct. at 644, (Frankfurter, J., concurring).

Due to appellant's failure to include in the record a transcript of the *in camera* conversation, he is unable to establish one of the essential criteria for determining the minimal requirements of due process, *i.e.,* the extent of harm done him by being deprived of cross-examination. If the proceedings had not been reported or if a transcript of the child's statements were denied him, we would presume substantial harm, but where a transcript is available but not produced on appeal, we make no such presumption. *Cf. Appeal in Maricopa County Juv. Action No. J–74449 A, supra* (party questioning sufficiency of the evidence has burden of producing transcript on appeal, or evidence will be presumed sufficient).

In considering the "hurt complained of", it is also important to distinguish a dependency proceeding from those in which a complete severance of parental rights is sought and also those in which the juvenile himself is the subject of criminal or delinquency proceedings.

> In the area of juvenile law, due process requirements also vary with the nature of the proceeding. In some jurisdictions a delinquency proceeding may closely resemble a criminal trial; the procedures sufficient to satisfy due process in each, however, are by no means identical. A parallel distinction should be drawn between neglect and termination proceedings. A termination proceeding may result in permanent severance of the parent-child relationship, and it therefore is unwise to assume that every procedure necessary to satisfy due process in that proceeding is likewise required in a neglect proceeding, which interferes only temporarily with the custody of the child. The failure to draw this distinction, however, is an error commonly found in case law and commentaries alike. (footnotes omitted)

*Singleman, supra,* 17 Ariz.L.Rev. at 1057.

We take note that under Arizona law, a child who has been adjudicated dependent may be placed with its parent, or in a foster home. If the child is placed in a foster home, the court, in reviewing foster care status, shall insofar as possible seek first to reunite the family. A.R.S. § 8–515(H). To that end the Department of Economic Security shall establish a program of counseling and rehabilitation of the parents. A.R.S. § 8–503(5). There are provisions for

---

1. The examining psychologists recommended counseling for the child and intensive psycho-

therapy for the appellant.

periodic review, A.R.S. § 8–515, and the law seeks to encourage and facilitate the timely return of the child to its natural parents. A.R.S. § 8–515.03(3).

█ We accept the proposition that the right of cross-examination, although indispensable to due process in termination, criminal and certain related proceedings, is not necessarily indispensable as applied to a child in a dependency proceeding.

█ It is often held that the right of cross-examination is essential to due process. *Forman v. Creighton School Dist. No. 14,* 87 Ariz. 329, 351 P.2d 165 (1960); *Harries v. United States,* 350 F.2d 231 (9 Cir., 1965); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). But we are not here faced with the usual adversary proceeding involving the life, liberty or property of mature parties, but with the status and best interests of a ten and one-half year old child, who has as much at stake as any other party and who also has a fundamental right, equal at least in importance to the rights of the other parties, to be dealt with fairly. *Oakes v. Oakes,* 45 Ill.App.2d 387, 195 N.E.2d 840 (Ill.1964); *Hicks v. Hicks,* 26 Tenn.App. 641, 176 S.W.2d 371 (Tenn.1943); *Lincoln v. Lincoln,* 24 N.Y.2d 270, 299 N.Y.S.2d 842, 247 N.E.2d 659 (N.Y.1969). Appellant was denied the traditional face-to-face confrontation type of cross-examination, but in view of the probable harmful effect on the child of such examination, if an acceptable alternative procedure was available which would have enabled him to know what the child told the court and to rebut the same by his own testimony or by other evidence, then in the balancing process already alluded to, the unfairness of denying him such confrontation and cross-examination would be assuaged in some degree. Moreover, the denial is somewhat compensated for by the fact that the presumably impartial judge, in his quest for truth, could be trusted to proceed in a fair manner. He does not inquire as an adversary.

We next examine the alternative procedures which were available to appellant by which he could ascertain the *in camera* statements and present evidence in rebuttal thereof if he so desired.

The proceedings were reported verbatim by a court reporter. Appellant could have requested the court to make a transcript available to him or at least to have the reporter read the shorthand notes to him in private, and could have requested the court to grant a short recess to permit him to check the transcript or notes and prepare his rebuttal evidence if he had any. There is no indication the court would have denied him such request, and under the circumstances it would have been error for the court to do so. Had appellant pursued such requests as a substitute for a formal face-to-face confrontation with the child, and thereby gained the desired information, he may have lost a certain tactical advantage. From our present vantage point, however, we cannot determine as a matter of law that such an alternative is shocking to the universal sense of justice or lacks fundamental fairness, or is contrary to established procedures in similar cases.

Whether a certain procedure has been customarily accepted as appropriate in similar cases by other courts throughout the land is of importance in determining whether that procedure comports with due process. If it violates generally accepted notions of fair play, then it is reasonable to expect that the procedure has been generally condemned. It is significant, in this respect, that the procedure complained of in this case has not been generally condemned. On the contrary, it has been a common practice resorted to by judges and upheld in numerous reported decisions, *see, e.g., Parker v. Parker,* 467 S.W.2d 595 (Ky.1971), although a few courts have condemned it outright.

The authorities can be placed in four general categories[2]: (1) those which hold the trial judge may properly interview chil-

---

**2.** While these categories serve the general purpose at hand, obviously some cases overlap, a few do not fit well into any one of the designat-

ed classifications, and there are variations among cases within a particular classification.

dren privately in chambers with or without the consent of the parents; (2) those which hold such procedure to be appropriate without the consent of the parties only when they are afforded an opportunity to find out what was said either from a reporter's transcript or by a statement from the judge on the record, and then given an opportunity to offer rebuttal testimony; (3) those which hold the private interview is harmless error where the judge's decision is independently supported by other evidence received in open court; and (4) those which hold it is never permissible to conduct such an interview. There is an excellent review of the cases in *Annot., Propriety of Court Conducting Private Interview with Child in Determining Custody*, 99 A.L.R.2d 954 (1965).[3] (We disregard those cases involving express or implied prior consent to the interview by the objecting party, as not in point. *See e.g., Bailey v. Bailey*, 3 Ariz.App. 138, 412 P.2d 480 (1966)).

Typical of the decisions in category (1) above is *State v. Clouse*, 93 Idaho 893, 477 P.2d 834 (1970). *Clouse* involved the severance of a parent-child relationship, wherein it was held the judge did not err in examining a 7 year old child in private without keeping a record of the proceedings, denying counsel the right to cross-examine, and basing his findings partially on the interview, on the basis that the best interests of the child were served by protecting him against the stressful effects which would under the circumstances result from the proposed cross-examination. *See also Parker v. Parker*, 467 S.W.2d 595 (Ky.1971) (holding that while the better practice might have been to permit the mother's attorney to be present, failure to do so was not so prejudicial as to require reversal); *Lincoln v. Lincoln, supra; Oakes v. Oakes, supra; Callen v. Gill*, 7 N.J. 312, 81 A.2d 495 (1951) (involving a stipulated procedure later objected to).

The following cases are illustrative of those in category (2) above (upholding the private interview over objection of a party provided a record thereof is preserved and made available): *Currier v. Currier*, 271 Minn. 369, 136 N.W.2d 55 (1965); *Walker v. Walker*, 40 Ohio App.2d 6, 317 N.E.2d 415 (1974) (reversed not because the parties and counsel were excluded, but because no record was made); *Cheppa v. Cheppa*, 246 Pa. Super. 149, 369 A.2d 854 (1977); *Strain v. Strain*, 95 Idaho 904, 523 P.2d 36 (1974); *Marshall v. Stefanides, supra.*

In *Cheppa* it was held that where a record of the children's testimony was kept, there was no error in questioning them in absence of counsel. The *Marshall* court set out the rule and the rationale therefor as follows (adding certain formal requirements):

We recognize that a child, particularly of young and tender years, could be subjected to severe psychological trauma because of a custody case. We are confronted, therefore, with an attempt to balance the right of the parents to present evidence as to what they deem to be in the best interest of the child as against possible severe psychological damage to the child. We believe that a Chancellor's interview of a child in a custody case out of the presence of the parties to be proper, in the discretion of the court, with or without the consent of the parties, and with or without the presence of counsel.

In all cases, unless waived by the parties, the interview must be recorded by a court reporter. Immediately following the interview its content shall be made known to counsel and the parties by means of the court reporter's reading of the record of that interview to them. In so holding, we share the view of some jurisdictions that a trial judge should be allowed to conduct an *in-camera* interview with the child or children to the exclusion of the litigants or counsel, if some means of appellate review of the

**3.** We view those cases in which parents are vying for custody of children as in contested divorce actions as highly analogous to dependency proceedings, in that both are civil in nature, the issues and relief sought are often parallel, and the welfare of the child is always involved.

interview is available. We, however, add the requirement that the court reporter shall make known immediately to the parties and counsel the content of the interview. This should be done *sans* the presence of the child or children.

We believe the method that we have hereinabove outlined minimizes, as much as possible, the psychological impact on the child, and at the same time allows interested parties to produce all the evidence that is necessary to enable the court to arrive at a fair and just determination in accordance with the best interest of the child.

*Id.* 302 A.2d at 685.

The cases in category (3) above (sustaining the judgment only if the open court evidence, without reliance on the child's statements, is sufficient) are represented by the following: *Burghdoff v. Burghdoff,* 66 Mich.App. 608, 239 N.W.2d 679 (1976); *Jenkins v. Jenkins,* 125 Cal.App.2d 109, 269 P.2d 908 (1954); *Baker v. Vidal,* 363 S.W.2d 158 (Tex.Civ.App.1962).

In *Burghdoff,* it was stated that although the judge erred in asking the child questions in a private interview relating to the moral fitness of the parties, in view of the great weight of evidence to support the judgment, the error was harmless.

The following cases exemplify the decisions which we have placed in category (4), *supra: Cook v. Cook,* 5 N.C.App. 652, 169 S.E.2d 29 (1969); *Schwartz v. Schwartz,* 382 S.W.2d 851 (Ky.1964). These courts have not inquired into the pertinent surrounding circumstances, the evidentiary effect of the evidence received, the extent of the harm actually suffered thereby, or the good result obtained; nor have they attempted to adjust conflicting interests, but have taken the position that a private *in camera* interview *ipso facto* violates a constitutional requirement of open judicial proceedings and of due process.

We are mindful that in a dependency proceeding, the Arizona Supreme Court has held it to be reversible error for the trial court to consider and base a decision on certain written professional reports without opportunity for cross-examination. *Appeal in Maricopa County Juvenile Action No. J–75482,* 111 Ariz. 588, 536 P.2d 197. The Court has also held in *Forman v. Creighton School District, supra,* that denial of the right to cross-examine is denial of due process of law. It could be argued that the same rule should apply in this case, for the judge considered statements made outside the formal trial which were not subject to cross-examination. However, the factual background in the cited cases is different in that in them the attendant damaging result on the child of the proposed confrontation is not involved. Accordingly, these cases are not considered as controlling here. *See Lincoln v. Lincoln, supra.*

In arriving at a conclusion in this case, we adopt the rationale of those cases delineated in the second category discussed above in an attempt to compromise and adjust the respective rights and interests involved.

When, in a dependency proceeding involving a young and immature child, a judge is convinced that under the special circumstances of the case it is in the interest of justice, in the best interests of the child, and consistent with due process, that he privately interview the child, he should do so only in the presence of an official court reporter, who should record the testimony or conversation verbatim. Further, at the request of any party, the court should grant an appropriate recess to enable the requesting party at his expense to secure a transcript of the private proceedings, or at the discretion of the judge, to have the court reporter read the proceedings back to the party (privately if he so requests). Such a procedure protects the child against the possible harmful effects of direct confrontation with its parents in an unbridled episode of cross-examination and at the same time affords the parent an opportunity to know what is going on, what is being said, to present rebuttal evidence, and to include a transcript of the proceedings on any appeal.

The appellant was entitled to ascertain the verbatim context of the statements

made in chambers, and to pursue the alternatives here outlined. He made no effort to elicit the desired information, and apparently let the matter drop after the *in camera* conversation. We cannot say on this record that appellant was denied due process of law.

The judgment is affirmed.

CONTRERAS, P. J., and FROEB, J., concur.