IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 42094

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JANE (2014-10) DOE. | ) ) ) | |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) | 2014 Unpublished Opinion No. 657 |
| | ) | Filed: August 11, 2014 |
| Petitioner-Respondent, | ) ) | |
| | ) | Stephen W. Kenyon, Clerk |
| v. | ) ) | |
| JANE (2014-10) DOE, | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cathleen MacGregor-Irby, Magistrate.

Judgment terminating parental rights, affirmed.

Paul R. Taber, III, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mary Jo Beig, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

The magistrate court found that Jane Doe neglected her children and terminated Doe's parental rights. Doe argues the court's decision resulted from the application of improper legal standards because it placed the burden of proof on her, not the State, and because the court found that Doe's parenting skills were merely impaired. Doe also argues that the decision to terminate was not based upon sufficient evidence.

## I.

## BACKGROUND

In September 2012, the Idaho Department of Health and Welfare (hereinafter, Department), received a report that Doe was using methamphetamine while caring for her infant and three-year-old child and that Doe's husband, who is also the children's father, was

incarcerated.[1]  At the time, Doe indicated she had used methamphetamine approximately twenty times in the last ninety days.  The Department offered a wide variety of services and developed a safety plan with Doe.

On December 23, 2012, the Department received a report that Doe and the children were living in a residence filled with broken glass, drug paraphernalia, and open chemical containers.  A Department employee attempted a home visit, but neither Doe nor her children were there.  A third party indicated that Doe had failed to feed the three-year-old child for two days and then dropped the child off with family.  That person indicated that the children were being cared for by their paternal grandparents because Doe was effectively homeless and was using methamphetamine.  The Department confirmed that the children were in the care of family members and appeared safe.  Department employees then tried to contact Doe, but she repeatedly refused their calls.

On January 9, 2013, the Department initiated proceedings to remove the children from Doe's custody.  The Department alleged that Doe failed to make use of services the Department offered, and she continued to abuse drugs.  The court granted the motion seeking removal.  Less than two weeks later, the court made a finding that the children "came within the purview of the Child Protective Act due to neglect" and placed them in the Department's custody.  The court subsequently approved case plans developed by the Department for Doe and her husband.

On December 11, 2013, at the conclusion of a permanency hearing, the court found that the Department had made reasonable efforts to reunify the family, that neither Doe nor her husband were safe placements, and that adoption by the children's paternal grandparents was an appropriate and practical plan.  The State then filed a petition seeking to terminate the parental rights of both Doe and her husband, alleging neglect.  Doe's husband stipulated to entry of default against him, and his rights were terminated on that basis.  Doe filed a responsive pleading generally denying the State's allegations.

At trial, Raymond Carlson, a certified drug and alcohol counselor, described Doe as "dual diagnosis," meaning that she had both a substance dependence disorder and a co-occurring mental health disorder.  He diagnosed Doe with cannabis and methamphetamine dependence.  He recommended residential treatment for chemical abuse, but Doe had declined.

---

[1]  Doe is also the biological parent of a third, older child, who is not at issue in this appeal.

2

Instead, she agreed to participate in intensive outpatient treatment for nine weeks. Carlson said that during that time, Doe failed to provide requested urine samples several times and tested positive for amphetamine use on two occasions, which was especially troubling because she was pregnant at the time.

Lianna Erickson-Trenbath, a clinical counselor and alcohol and drug counselor, also provided outpatient substance abuse services to Doe. She testified that Doe declined an offer to move to sober living facilities because she would be unable to continue living there once she gave birth. Instead, at the time of the trial, Doe lived with roommates who were actively using drugs, but was investigating sober living options including residential treatment facilities that accept women with children. Erickson-Trenbath also testified that Doe had tested positive for amphetamine a few weeks before trial and had refused to submit to random urinalysis in the period after the positive test and before the trial commenced.

Allison Lough supervised Doe's visits with her children. She testified that Doe repeatedly arrived late or missed scheduled visitation periods, including two no-shows in the month before the trial. However, when Doe did visit with the children, the visits were happy and loving, with only minor safety concerns.

The children's guardian ad litem testified that he had observed the children during supervised visits with Doe and while under the care of foster parents. He testified that Doe was unable to provide stable ongoing care for the children because she lived in an environment where children would not be safe and there was no indication that Doe could maintain long periods of sobriety. In his view, Doe had not progressed during the time he had known her. Finally, he testified that the children's best interests would be served by termination.

Social worker Julianne Stadler served as Doe's case manager. She described some of the environment the children had been subjected to, including unsafe living conditions. Stadler also testified that the older child had witnessed significant domestic violence while in Doe's care and that Doe had used the older child to obtain clean urine to submit for testing.

Stadler testified that during the thirteen-month period the children had resided in foster care, Doe had lived in five different homes, continued drug use, was arrested and incarcerated, and failed to take advantage of several opportunities to receive free services. She also entered into romantic relationships with abusive men. Stadler said Doe was stopped by police with one of these men, who was found to possess at least a quarter-pound of methamphetamine. She also

described a pattern of reduced visitations where Doe was initially offered a great deal of access to the children but declined those visits, settling for a single one-hour-long visit per week when she had been offered five visits. Stadler opined that Doe had previously been capable of parenting her children safely, but was no longer able to do so. It was also her opinion that Doe was not making substantial progress toward regaining those skills. Finally, she opined that termination was in the best interests of the children.

Doe's family members testified on her behalf. Doe's mother, great-aunt, and maternal grandmother testified that they did not believe that Doe had used drugs since Thanksgiving of 2013, based upon their communications with and observations of Doe. Doe's mother also testified that Doe was "acting like [herself] again." Each also testified that Doe loved her children.

Doe expressed significant remorse and regret for the disruption she caused in the lives of her children and family. She testified that she experienced a period of extreme stress that resulted in the loss of her children. In a short period of time, she experienced significant post-partum depression, used methamphetamine, lost her job, and lost the support of her husband, who was incarcerated. At that time, she accepted voluntary services from the Department and left her children in the care of their paternal grandparents. Doe made clear that she loved her children, but she admitted that she was not prepared to offer appropriate care for her children and that a great deal of work would be required for her to regain that capacity. She believed she could, over time, become a fit parent again if offered help.

During the trial, Doe asked that she be voluntarily drug tested. The Department objected because Doe had refused drug tests for the prior three weeks. The court authorized the drug test, but noted that it would consider the results of a recent drug test in light of the weeks of refusal. At that time, Doe's urinalysis came back clean.[2]

After the trial ended, the court took the matter under advisement. In a written memorandum, the court found that the Department had made reasonable efforts to reunify Doe with her children and that Doe's "neglect of these children has been established by clear and convincing evidence." It also concluded that that Doe "lacks appropriate parenting capacities

---

[2]     A second drug test was performed between the first and second days of trial, which the Department attempted to place in evidence. The Department was unable, however, to lay the foundation required for admission of that test result.

necessary for her children to be returned to her in that she is unstable and has established a pattern of poor decision making when it comes to her finances and housing."

Doe appeals, contending that the court erred by applying an improper legal standard and by making a finding of neglect that is not supported by substantial evidence.

## II.

## ANALYSIS

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that wherever possible family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when the Department intervenes to terminate the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769-70 (1982). *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said, however, that the substantial evidence test requires a greater quantum of evidence in cases where the trial court finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060

(2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005(b) permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interest and the court finds neglect or abuse. Idaho Code Section 16-2002(3) defines "neglect" as including any conduct described in I.C. § 16-1602(26).[3] At the time in question, Section 16-1602(26)(a) provided, in pertinent part, that a child is neglected when the child "is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian, or other custodian or their neglect or refusal to provide them."

## A.     The Court Applied the Proper Legal Standard

Doe argues that the court applied an improper standard in two ways. First, she argues that the court placed the burden of proof on her, rather than the Department. Second, she argues that the court found that her ability to parent was merely "impaired," which is insufficient to conclude that the children were neglected.

As to Doe's first argument, Doe relies upon language contained in the petition and quoted by the court in its memorandum decision: "[T]he mother failed to demonstrate the ability to provide a permanent, stable residence for the children." (emphasis added). The court's legal conclusion also states:

> The State has proven by clear and convincing evidence that the biological mother has neglected her children by conduct or omission in that the mother's substance abuse issues and/or mental health issues impair her ability to provide proper parental care and control; *the mother failed to demonstrate the ability to provide a permanent, stable residence for the children.*

(emphasis added). Certainly, it would have been error to place the burden of proof onto Doe. However, we conclude that the court did not apply the wrong standard. The court expressly recited and applied the proper burden of proof. For example, the court stated that "the state has met their burden of proof," that "[Doe's] neglect of these children has been established by clear

---

[3]     The Child Protection Act and the statutes governing termination of parental rights were amended in 2014. As of July 1, 2014, the description of neglect contained in I.C. § 16-1602(26) was moved to I.C. § 16-1602(28).

6

and convincing evidence," that "[t]he evidence in this case is clear and convincing and supports this Court's determination that [Doe's] rights be terminated, based on neglect," and that "[t]he State has proven by clear and convincing evidence that the biological mother has neglected her children . . . ." The statements that Doe failed to "demonstrate" her ability to parent do not appear to refer to her lack of demonstration at trial, but rather to her failure to provide an appropriate residence for the children throughout the period while they were in the Department's custody. Accordingly, we conclude that the court did not shift the burden of proof to Doe.

Doe's second argument draws a distinction between the court's finding that Doe's ability to parent was "impaired" and the language in I.C. § 16-1602(28), which defines neglect to mean that a child is "without proper parental care." In Doe's view, the term "without" indicates an absolute absence of care, while "impaired care" is lesser, but extant care.

To briefly engage this semantic argument, we note that the statute does not state that the court must find that children were without care, it must find that the children were without "proper" care. The statute contemplates existing care that is so deficient (or "impaired") that it is not "proper" care. Moreover, the court found, elsewhere in its memorandum, that Doe lacked the ability to care for her children:

> The court is convinced that Doe *lacks appropriate parenting capacities* necessary for her children to be returned to her in that she is unstable and has established a pattern of poor decision making when it comes to her finances and housing.

Therefore, we find that the court made the required finding.

### B.     The Court's Findings Were Based Upon Substantial and Competent Evidence

On appeal, Doe argues that the decision of the district court was not based upon substantial and competent evidence. First, Doe argues that the court failed to properly consider Doe's period of sobriety before trial. She argues she was clean for two months, as measured from the clean urinalysis during the first day of trial until the court entered the order terminating Doe's parental rights. Second, she claims that she submitted compelling evidence that she loved her children and the court found that Doe loves her children.

The court concluded that Doe's "neglect of these children has been established by clear and convincing evidence." The court's decision is supported by substantial evidence, including the opinion of Stadler, that Doe was incapable of providing safe care to her child, and Doe's

7

admission that she was not capable of caring for her children when using methamphetamine or even capable of parenting her children at the time of the trial.

Doe's argument that she was clean for two months is not supported by any evidence. The court considered Doe's clean urinalysis at trial, but made clear that the weight of that evidence was limited by Doe's previous refusals to submit to drug testing. Doe's claim that she did not use drugs in the period after conclusion of the trial, but before the order was drafted, is wholly speculative and unsupported by anything in the record. Accordingly, the court did not err by failing to consider Doe's alleged post-trial period of sobriety.

Below, Doe and the court agreed that Doe loves her children. On appeal, Doe cites *State ex rel. Child v. Clouse*, 93 Idaho 893, 477 P.2d 834 (1970) for the proposition that "parental affection is a priceless advantage." We do not disagree with that contention. However, *Clouse* does not stand for the proposition that parental rights should not be terminated when a parent loves her child. Indeed, *Clouse* discusses the propriety of termination despite the fact that a parent loves her child:

> [P]arental affection is a priceless advantage. However, a child may not live on parental affection alone. In addition to love and affection and the satisfaction of his physical needs, a child requires moral guidance and training to allow him to grow into a well-adjusted, normal adult.

*Id.* at 896, 477 P.2d at 837. Here, the district court recognized the same somber fact that the *Clouse* court did: a loving parent may not be a fit parent. The record demonstrates that the district court's decision was well supported by substantial and competent evidence.

## III.

## CONCLUSION

The trial court applied the correct standards in determining that Doe neglected her children, and the court's decision is supported by adequate evidence in the record. Therefore, the order of the court terminating Doe's parental rights is affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**