23 Ariz. App. 32 (1975)
530 P.2d 389
Laura Marie HERNANDEZ, aka Perez, Smith, Appellant,
v.
STATE of Arizona ex rel. ARIZONA DEPARTMENT OF ECONOMIC SECURITY, as Guardian of the minor appellee, Appellee.
No. 2 CA-CIV 1695.
Court of Appeals of Arizona, Division 2.
January 15, 1975.
Rehearing Denied February 7, 1975.
Review Denied March 11, 1975.
*33 Merchant, Lohse & Bloom by William A. Riordan, Tucson, for appellant.
N. Warner Lee, Former Atty. Gen., Bruce E. Babbitt, Atty. Gen. by Charles E. Buri, Asst. Atty. Gen., Tucson, for the State of Arizona.
Schroeder, Soelter & Rosenthal, P.C. by Larry S. Rosenthal, Tucson, for minor appellee.
OPINION
HOWARD, Chief Judge.
This is an appeal from an order of the juvenile court terminating the parent-child relationship.
A.R.S. § 8-543 provides:
"Any party aggrieved by any order, judgment or decree of the court may appeal to the court of appeals for review of questions of law. The procedure of such an appeal shall be governed by the same provision applicable to appeals from the superior court. The pendency of an appeal or application therefor shall not suspend the order of the court regarding a child."
The parties to this appeal have interpreted the foregoing statute as meaning that the sufficiency of the evidence cannot be attacked on appeal. Such interpretation is erroneous. A.R.S. § 8-543 *34 means only that the appellate court shall function as it always does on appeal and not as a factfinder. Whether there is sufficient evidence to sustain the action of the juvenile court is a question of law.
A.R.S. § 8-533 sets forth the grounds for termination:
* * * * * *
"1. That the parent has abandoned the child or that the parent has made no effort to maintain a parental relationship with the child. It shall be presumed the parent intends to abandon the child if the child has been left without any provision for his support and without any communication from such parent for a period of six months or longer. If in the opinion of the court the evidence indicates that such parent has made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent.
2. That the parent has neglected or wilfully abused the child.
3. That the parent is unable to discharge the parental responsibilities because of mental illness or mental deficiency and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period.
4. That the parent is deprived of his civil liberties due to the conviction of a felony if the felony of which such parent was convicted is of such nature as to prove the unfitness of such parent to have future custody and control of the child, or if the sentence of such parent is of such length that the child will be deprived of a normal home for a period of years.
5. That the parents have relinquished their rights to a child to an agency or have consented to the adoption."
The burden of proof with respect to the ground for termination is a preponderance of the evidence. A.R.S. § 8-537(B). If the court decides to terminate, it must make a written order which shall recite findings of fact upon which the order is based, including findings pertaining to the Court's jurisdiction. A.R.S. § 8-538(A).[1]
The effect of the court order is contained in § 8-539:
"An order terminating the parent-child relationship shall divest the parent and the child of all legal rights, privileges, duties and obligations with respect to each other except the right of the child to inherit and support from the parent. This right of inheritance and support shall only be terminated by a final order of adoption."
The pertinent facts are as follows. In 1970 the subject minor was living with appellant, his natural mother, eight brothers and sisters, and his mother's husband. In June of 1970, after a police investigation his mother and her husband were charged with aggravated assault upon the minor. After a juvenile court hearing, the child was placed in the temporary custody and control of the Pima County Department of Public Welfare which was given the power to place him back in the home if it were deemed advisable.
On February 17, 1971, a review hearing was held by the juvenile court. Care, custody and control of the minor was continued in the Welfare Department and continuation of a counseling program with the mother and her husband was ordered.
On March 25, 1971, the mother pled guilty to criminal neglect and abuse of the child and was placed on probation.
On August 19, 1971, the child was placed by the Welfare Department back in the home. On October 5, 1972, the juvenile court again reviewed the case. The court recommended that the minor be taken to the Tucson Child Guidance Clinic for a complete evaluation. The court further ordered the Welfare Department to complete its investigation for alternate placement of the child in New Mexico or Texas with relatives.
*35 Protective Services, on November 22, 1972, received a report from the child's kindergarten teacher that he had facial bruises which were said to have been inflicted by the mother and her husband. The next day the child was removed from the home and admitted to the Pima County Pediatric Clinic where he was found to be suffering from injuries not compatible with what might be sustained as a result of normal childhood accidents. Furthermore, the child told the doctor that the injuries were inflicted by his mother and her husband.
It was not until August 20, 1973, that the petition to terminate parental rights was filed. In the interim period the mother and her husband were counselled at the Child Guidance Clinic and the child was under the care of a child psychologist.
The record also reveals the following acts of abuse which took place prior to and led to the initial contact with juvenile court: Forcing the minor to hug a tree for long periods of time; making him stand outside in a bucket of water; locking him in a closet; kicking a chair out from underneath him, causing him to strike his mouth on the dining room table; kicking him in the stomach; beating him with a shoe, towel, belt and belt buckle; putting chili in his food to discipline him; and failure to obtain for him medical aid for bowel blockage.
Appellant contends that A.R.S. § 8-537(B) which requires only a preponderance of the evidence with respect to the grounds for termination is unconstitutional. Specifically, the contention is that such a standard constitutes a lack of substantive due process and that proof by clear and convincing evidence is an essential of due process and fair treatment when dealing with termination of parental rights.
As usual, we are faced with the judicial task of balancing competing interests. We are not only concerned with the rights of the natural parents but also the rights of the minor child, which include the right to good physical care, adequate food, shelter and clothing, the right to emotional security, the right to be free from injury and neglect and the right to be with his natural parents and siblings.
If one were to focus only on the rights of the natural parents it would perhaps be arguable that a burden of proof higher than a preponderance of the evidence is necessary to achieve the sometimes elusive standard of "fundamental fairness". After all, for some parents the loss of a child through this legal process can be as serious as imprisonment in a criminal case. However, we are not dealing solely with the rights of the parents, and the problem must be analyzed with all interests in mind.
As stated by Justice Harlan in his concurring opinion in In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970),
"... even though the labels used for alternative standards of proof are vague and not a very sure guide to decision-making, the choice of the standard for a particular variety of adjudication does, I think, reflect a very fundamental assessment of the comparative social costs of erroneous factual determinations ... a standard of proof represents an attempt to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." 397 U.S. at 369-370, 90 S.Ct. at 1075.
Justice Harlan suggests that the standard of proof should reflect an assessment of the comparative social disutility which is inflicted upon either party to the lawsuit when the factfinder is wrong in his factual conclusions. A factual error can influence the outcome in a case in one of two ways. For example, in a criminal case it can result in the conviction of an innocent person, or it can result in the acquittal of a guilty man.
If the standard of proof in a criminal case were a preponderance of the evidence rather than beyond a reasonable doubt there would be a smaller risk of factual errors *36 resulting in freeing guilty persons but a far greater risk of factual errors resulting in convicting the innocent. Thus, the standard of proof beyond a reasonable doubt reflects a fundamental value determination that it is far worse to convict an innocent man than to acquit a guilty one. In In re Winship, supra, the court held that this value determination is so fundamental as to attain constitutional dimension in the form of substantive due process.
In a termination proceeding an error in factual determination can result in the termination of the parental relationship when such termination is not justified. On the other hand it can result in the failure to terminate when the relationship should be ended. The standard of proof is going to affect the relative frequency of those two erroneous outcomes. The standard of "a preponderance of the evidence" rather than "clear and convincing evidence" would result in a greater risk than parental rights would be erroneously severed, but a smaller risk than a child, as a result of a factual error, would be forced to return to a hostile, if not dangerous, family situation or spend his childhood in a series of temporary foster homes. Comparing the social disutility of these two erroneous outcomes, we do not believe that one can make a fundamental value determination that the erroneous severance of parental rights, vis-a-vis the erroneous failure to sever, constitutionally requires a higher burden of proof.
Appellant further contends (1) that the order of termination is contrary to the purpose and philosophy of the act permitting termination of parental rights and (2) the termination was without any prior effort toward rehabilitation of the parent-child relationship and therefore violative of due process. We do not agree.
The legislative purpose of the Child Welfare and Placement Law has been set forth in Laws 1970, Ch. 153:
"The purpose of this act is to provide for voluntary and involuntary severance of the parent-child relationship and for substitution of parental care and supervision by judicial process which will safeguard the rights and interests of all parties concerned and promote their welfare and that of the state. Implicit in this act is the philosophy that, wherever possible, family life should be strengthened and preserved and that the issue of severing the parent-child relationship is of such vital importance as to require a judicial determination in place of attempts at severance by contractual arrangements, express or implied, for the surrender or relinquishment of children. This judicial action is intended primarily for those situations where other judicial remedies appear inappropriate."
The record belies appellant's contention. Rehabilitation efforts were undertaken by the court, the Department of Public Welfare, the Child Guidance Clinic and the psychologist. Efforts were undertaken to preserve the parent-child relationship but failed, not because of any fault on the part of the juvenile court or Pima County Welfare, but because of the behavior of the mother, her husband and the other siblings toward this child. In some cases there comes a time when failure to restore the parent-child relationship has to be recognized and it is in the best interest of the child to terminate this relationship and give the child the opportunity to be nurtured in the warmth and security of a loving home.
This is one of those cases.
Affirmed.
HATHAWAY and KRUCKER, JJ., concur.
NOTES
[1] We suspended this appeal and remanded to the juvenile court for compliance with A.R.S. § 8-538(A).