Adron TUCKER and Francine Wade,
Appellants (Respondents Below),

v.

MARION COUNTY DEPARTMENT OF
PUBLIC WELFARE, Appellee
(Petitioner Below).

No. 2–577A162.

Court of Appeals of Indiana,
Second District.

Aug. 18, 1980.

Peter L. Cassady and Cynthia A. Metzler, Indianapolis, for appellants.

Theodore L. Sendak, Atty. Gen., Jack R. O'Neill, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

This appeal is brought by Adron Tucker and Francine Wade, the mother and grandmother, respectively, of Charles, Jr. and Betty Ross. The appellants challenge certain procedures culminating with an order of the Juvenile Court of Marion County which, in addition to declaring permanent wardship over the children, denied the appellants' Verified Petition to Dissolve Temporary Wardship and found I.C. 31–5–7–1 (Burns Code Ed. 1973) *et seq.*[1] and its application in the present case to be constitutional.

On March 12, 1976, police officers removed Charles, Jr., and Betty from the custody of Adron Tucker, who was living with the children's maternal grandmother. On March 17, 1976, the Welfare Department filed a petition in juvenile court to have the children declared neglected and made temporary wards. On the same date, the trial court issued an *ex parte* order granting temporary wardship over both children. On March 22, 1976, Adron Tucker received the first official notice of the seizure by means of service of a summons with copies of the Welfare's Department's petition and the court's order.

The appellants filed a petition to dissolve the temporary wardship order on March 31, 1976. The court did not rule on this petition, electing instead to schedule a hearing on April 14, 1976, to consider both the Welfare Department's petition for permanent wardship and the appellants' petition to dissolve. By reason of numerous continuances, the hearing was not held until September 30, 1976.

Evidence was presented and argument heard on the Welfare Department's petition to declare the children neglected. On November 3, 1976, the court found the children to be neglected and ordered the temporary wardships continued pending argument on constitutional issues raised by appellants. On December 6, 1976, argument was heard on the constitutionality of certain sections of the Indiana Neglected Child Statute. The court upheld the constitutionality of the pertinent statutes and thereupon declared Charles, Jr. and Betty permanent wards of the Welfare Department. The court summarized its rulings in the case per the following order:

On April 5, 1977, the Court conducted a hearing on respondents' Motion To Allow Respondent To Proceed On Appeal In Forma Pauperis and at that time ordered that rather than have a transcript of the record of the above-entitled cause prepared, an Order should be prepared which would show the Court's December 6, 1976 Judgment in this cause which was verbally entered on said date and which states all of the rulings which the respondent presented for appeal. Counsel for respondents agreed that no transcript was needed for the appeal if such an order were prepared and accordingly the aforementioned Order is in the following words and does accurately and correctly state the proceedings and rulings as hereinafter indicated.

A. The trial court did grant the Marion County Department of Public Welfare's petition for temporary wardship on March 17, 1976 by issuing an *ex parte* order and setting a hearing on April 14, 1976 on the petition for permanent wardship.

B. The trial court set a hearing on April 14, 1976 on respondent's motion

---

1. Repealed by Acts 1975, P.L. 296, § 9, and Acts 1978, P.L. 136, § 57, effective October 1, 1979. For the present law, see I.C. 31–6–1–1 (Burns Code Ed. Supp. 1979) *et seq.*, and more particularly I.C. 31–6–4–16.

to dissolve the temporary wardship which was filed on March 31, 1976 but various requests for continuances postponed the hearing on the petition to dissolve the temporary wardship and the petition for permanent wardship until September 30, 1976 and October 1, 1976 during which period the children involved remained temporary wards of the court. On September 30, 1976 and October 1, 1976 the Court conducted a trial on all factual issues and allowed all parties to present and confront evidence in support of their respective positions.

C. The trial court, after considering all evidence presented by all parties at the trial, found by the preponderance of the evidence that Charles Ross Jr. and Betty Ross were neglected and dependent children within the meaning of 31–5–7–1, *et seq.*, on November 3, 1976 but suspended final judgment pending argument on the constitutional issues respondents had raised.

D. The trial court, in reaching its decision that Charles Ross Jr. and Betty Ross were neglected and dependent children within the meaning of I.C. 31–5–7–1 *et seq.*, did not require and did not find "clear and convincing" evidence of neglect and dependence.

E. The trial court, in reaching its decision that Charles Ross Jr. and Betty Ross were neglected and dependent children within the meaning of I.C. 31–5–7–1 *et seq.*, did not require and did not find that its declaration was the least restrictive alternative to the severance of the familial ties involved in the matter.

F. On December 6, 1976, the trial court, after considering oral argument from all sides and written argument from the respondents ruled that:

(i) The emergency removal sections found at I.C. 31–5–7–9 and I.C. 31–5–7–12 are constitutional on their face and as applied;

(ii) I.C. 31–5–7–6 was not unconstitutionally vague;

(iii) I.C. 31–5–7–1 *et seq.* was not in violation of the Fourteenth Amendment to the United States Constitution for failing to require "clear and convincing" evidence of dependence and neglect;

(iv) I.C. 31–5–7–1 *et seq.* and the practices thereunder are not violative of the Fourteenth Amendment to the United States Constitution for failure to require that the least restrictive alternative be utilized in serving familial integrity; and on the same day the Court denied respondents' Verified Petition to Dissolve Temporary Wardship and entered JUDGMENT that the children, Charles Ross Jr. and Betty Ross were neglected and dependent children and were, as of that date, permanent wards of the Marion County Department of Public Welfare and the Juvenile Court pursuant to I.C. 31–5–7–15.

Dated this 4 day of May, 1977.

On February 14, 1977, the court ordered that the children be removed from the Marion County Children's Guardian Home and placed with the appellant Tucker, to remain as wards of the Welfare Department subject to discretionary removal.

Appellants present the following issues for our review:

1) whether the temporary wardship ordered was obtained in deprivation of appellants' procedural due process rights,

2) whether the child neglect statute, specifically I.C. 31–5–7–9, I.C. 31–5–7–12, and I.C. 31–5–7–6 are unconstitutionally vague,

3) whether the child neglect statute is unconstitutional for its failure to require the least restrictive means of severing familial integrity, and

4) whether the preponderance of the evidence standard of proof is unconstitutional in the context of a proceeding to determine child neglect.

### (1) Procedural Matters

Appellants attack, as constituting an unconstitutional deprivation of due process, a broad array of procedures, both as applied

and as appear upon the face of the pertinent statutes. The procedures in question provide for summary seizure, determination of neglect, and orders of temporary wardship. Appellants do not challenge the sufficiency of the evidence supporting the permanent wardship order. In fact, the transcript of the evidence has not been included in the record on appeal.

We must determine initially whether the *ex parte* order of temporary wardship merged into the final judgment of permanent wardship. If such is the case, there would be no effective remedy for errors committed prior to and within that order. Any errors contained therein would be moot.

The Third District determined that errors committed in the granting of a temporary restraining order could be asserted upon appeal from the subsequent grant of a preliminary injunction. *International Association of Machinists & Aerospace Workers, Local 1227 v. McGill Manufacturing Co.* (3d Dist. 1975) 164 Ind.App. 321, 328 N.E.2d 761. There, the court reviewed a jurisdictional defect in the issuance of the temporary restraining order and remanded the cause for dismissal. *But see* Judge Hoffman concurring at 328 N.E.2d 768. Although a temporary restraining order is ordinarily subsumed by a preliminary injunction, the majority's analysis in that case was correct since subject matter jurisdiction is never waived. *State v. Tipton Circuit Court* (1962) 242 Ind. 642, 181 N.E.2d 230; *Matter of City of Fort Wayne* (3d Dist. 1978) Ind.App., 381 N.E.2d 1093. *Accord, State ex rel. Baker v. Turner* (1977) Tenn. App., 562 S.W.2d 435 (where crucial issue is one of jurisdiction, fact that injunction has since been dissolved does not render appeal moot.)

To be compared and distinguished is *Terry v. Terry* (1st Dist. 1974) 161 Ind.App. 293, 315 N.E.2d 379. In *Terry* a wife brought an appeal from an order awarding custody of the minor children to the husband. While the appeal was pending, the trial court modified the previous order and granted custody to the wife. The Court of Appeals reasoned that because the order appealed from had been completely superseded, an appeal of the initial order could have no effect on the subsequent order and was, accordingly, moot. *See also Goldspinner v. Goldspinner* (1976) 52 App.Div.2d 837, 382 N.Y.S.2d 824 (appeal from initial division of assets in a divorce dismissed as academic since superceded by an amended judgment).

In an analogous situation, the Florida Court of Appeals held that an appeal by judgment creditors of a preliminary order authorizing an administrator to pay certain costs was rendered moot by the creditors' failure to appeal from a subsequent order establishing the amount of costs due. *In re Estate of Lindsay* (Fla.Dist.Ct.App.1968) 207 So.2d 736. The court explained:

> "It follows that whatever disposition would be taken by this court in disposing of the orders appealed would in no way offset or disturb the [subsequent] order of September 17th. Thus, the judgment creditors having failed to appeal the order dated September 17, 1965, the appeal from the earlier orders is moot." 207 So.2d at 738.

While there may have been errors of constitutional dimension in the temporary wardship determination, we have no effective or practical means of remedying the violation of appellant's rights, if any, at this point in time.[2] At the final hearing, the parties were afforded notice and an opportunity to be heard. There, the children were found to be, in fact, neglected. Accordingly, reversal of the wardship is not an option. Likewise, while no later hearing can undo an arbitrary action subject to procedural safeguards, neither can the court now go back in time and restore the children to appellants for the amount of

---

**2.** The remedies of writ of mandate and prohibition or habeas corpus might have been invoked by appellants at the time of the emergency wardship proceeding. *But see Duchesne v. Sugarman* (2d Cir. 1977) 566 F.2d 817.

time they were wrongfully withheld.[3] Neither are we at liberty to award damages against the State in this instance since the legislature has not so provided. *See* Ind. Const. of 1851, Art. IV, § 24. Finally, the statute in question was subsequently amended to clarify both the definition of neglect and the proceedings incident to such a determination. For all these reasons, we find the controversy over the temporary wardship to be moot and we decline to reach the due process issues raised therein.

### (2) Vagueness and (3) Restrictive Means

Appellants challenge, as unconstitutionally vague, I.C. 31–5–7–9 (Burns Code Ed. 1973) and I.C. 31–5–7–12 (Burns Code Ed. 1973) which set forth the standards by which an emergency removal may be effected, and I.C. 31–5–7–6 (Burns Code Ed. 1973) which delineates the definitional elements for a finding of "neglect". Appellants contend that all three statutes fail to set meaningful standards and apprise of that conduct which is proscribed. Cited for support are numerous decisions which have held similar statutes vague, overbroad or unconstitutionally applied, both as to emergency removal procedures, *see Roe v. Conn* (M.D.Ala.1976) 417 F.Supp. 769; *Newton v. Burgin* (W.D.N.C.1973) 363 F.Supp. 782, aff'd (1974) 414 U.S. 1139, 94 S.Ct. 889, 39 L.Ed.2d 96, and as to statutes providing for a determination of neglect or a termination of parental rights. *See Alsager v. District Court* (S.D.Ia.1975) 406 F.Supp. 10, aff'd (8th Cir. 1976) 545 F.2d 1137. *But compare D____ F____ v. Texas* (Tex.Civ.App.1975) 525 S.W.2d 933; *In re McMaster* (1971) 259 Ore. 291, 486 P.2d 567.

Appellants, however, have failed to recognize and comply with a firm tenet of review of constitutional attack on statutes in this state:

"Where the constitutional validity of a statute is drawn in issue, it is essential that the party bearing the burden on the issue produce a record before the court which justifies deciding the constitutional issue. Such a record provides the court with the necessary tools to make a rational determination. It includes a statement of the legal test to be applied in determining whether a particular constitution-

---

**3.** We are mindful of the following admonishment in *Town of Speedway v. Harris* (2d Dist. 1976) Ind.App., 346 N.E.2d 646 wherein the court noted that it is no defense that plaintiffs were eventually afforded a hearing:

" 'If the right to notice and a hearing is to serve its full purpose, then it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. *Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. "This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone." Stanley v. Illinois*, 405 U.S. 645, 647, 92 S.Ct. 1208, 1210, 31 L.Ed.2d 551.'
92 S.Ct. at 1994–1995.
(Our Emphasis.)"

. . . . .

"The arbitrary action cannot be undone, but future damage can be avoided. If Harris was innocent of any misconduct, such a subsequent hearing (assuming it passed 'due process' muster as to form) might have provided 'due process' protection against any future injury to Harris, and at the same time granted whatever relief necessary to compensate Harris for the original wrongful deprivation." (Footnote omitted.) *Speedway v. Harris, supra*, 346 N.E.2d 646, 653, quoting from *Fuentes v. Shevin* (1972) 407 U.S. 67, 81–82, 92 S.Ct. 1983, 1994–5, 32 L.Ed.2d 556.
In a footnote, the court also observed:

"Assuming that it could be proved by Speedway that Harris would probably not have any defenses to the alleged charges, such prejudgment does not negate the requirement of providing due process of law prior to the deprivation.

'The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing. "To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits." *Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424, 35 S.Ct. 625, 629, 59 L.Ed. 1027.'
*Fuentes, supra*, note 4, 92 S.Ct. at 1997."
346 N.E.2d 646, 653 note 16.
We do not imply that the final hearing rectified earlier constitutional infirmity, if any.

al provision has been violated, or citations of authorities which state that test. And it also includes any factual matter necessary to a proper application of the test. Without essential legal argument and factual matter, the court, particularly in a civil case, is justified in refusing to adjudge whether the statute complies with the commands of the constitutions, for in such case it does not 'appear from the record that there is a substantial foundation for the allegation.' [Citations omitted.]" *Board of Commissioners v. Kokomo City Plan Commission* (1975) 263 Ind. 282, 287, 330 N.E.2d 92, 96.

The court further stated 330 N.E.2d at 96:

"If the court may not take judicial notice of the necessary factual determinations, such facts must be presented and fully developed in a suitable adversary atmosphere. [Citations omitted.] . . . And in the event an overbroad statute might be found to be unconstitutional as applied to the particular situation at issue, it may be so declared, and in such event the statute is left in effect. [Citations omitted.]"

The appellants agreed with the trial court that no factual issues were present which would necessitate the transcript of the evidence be included in the record on appeal. It is axiomatic that appellants may not attempt indirectly what they may not accomplish directly. This court may not be forced to abdicate its prerogative of narrowing or construing a statute in its application to the parties on appeal. We are presented with no basis with which to determine whether appellants have standing to complain of the statute's arguable vagueness. The conduct in question may have been so flagrant that it was undeniably proscribed. As succinctly stated in *In re Carl & Annette N.* (1977) 91 Misc.2d 738, 398 N.Y.S.2d 613, 618:

"[W]hen a person's conduct thus falls squarely within the proscription of the statute . . . that person may not invoke the vagueness doctrine because the statute may be indefinite in its application to others. [Citations omitted.]"

*See also White v. Minter* (D.Mass.1971) 330 F.Supp. 1194,[4] *In re J. F. C.* (Okla.1978) 577 P.2d 1300; *In re Neglect Dependency of D. T.* (1975) 89 S.D. 590, 237 N.W.2d 166.

The same infirmity applies to the contention that the least restrictive alternative was not utilized nor is provided by the statute. Any analysis of what alternatives were in fact available is prevented by the absence of the transcript of evidence on appeal.

### (4) Standard of Proof

The trial court expressly stated that the preponderance of the evidence standard was used in arriving at the determination of neglect and order of permanent wardship. Appellants contend that the applicable standard is "clear and convincing" proof, citing *Alsager v. District Court, supra,* 406 F.Supp. 10. We decline to follow Alsager insofar as it suggests that the preponderance of the evidence test does not pass constitutional muster with respect to termination of parental custody.[5]

---

4. In *White*, the court avoided ruling on the statute itself since the statute had been unconstitutionally applied to the parties.

5. The order here granted permanent custody over the children. It did not sever the parental rights. The court in *Alsager* expressly disclaimed any applicability of its holding to proceedings resulting in the temporary transfer of custody as follows:

"The court is not presently concerned with the child's rights vis-a-vis the parents, even though it realizes that a child has a substantial interest in being free from parental neglect and abuse. The court is only concerned with the parents' rights, in a termination context, vis-a-vis the state (*See,* § 232.1 for the rule of construction applicable to § 232.41 which refers to the 'best interest of the state.') Plaintiff's amended complaint does not challenge the Iowa neglect statutes; thus the Court's ruling today does not prevent the state from temporarily separating the child from its parents upon an adjudication of neglect or dependency. *See* §§ 232.2(15); 232.-33 of the Code of Iowa. The Court's ruling goes only to state action which permanently destroys the family unit, not to a temporary physical separation for the protection of the child. Further, the Court expresses no opin-

■ The "clear and convincing" standard has been employed in various quasi-criminal proceedings in recognition of the fact that some civil proceedings are significantly different from the ordinary economic case where "we view it as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor." *In re Winship* (1970) 397 U.S. 358, 371, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368. The stricter standard is utilized when fundamental rights are involved and the legal and social ramifications of the civil proceeding are serious. So, for example, in cases of involuntary commitment of persons to mental hospitals, our Supreme Court has held that in view of the fundamental liberty interests at stake and the stigma accompanying commitment, due process requires that the fact finder be persuaded by clear and convincing evidence. *Addington v. Texas* (1979), 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323. The standard of proof employed reflects society's assessment of where the risk of factual error should fall. Illustrative is the criminal standard of "beyond a reasonable doubt" which indicates our value determination that it is better to acquit a guilty person than to convict an innocent one. In a proceeding to establish wardship, we must balance the competing interests of the parents, the child, and the state and consider the comparative damage done to each if the fact finder errs.

The "clear and convincing" evidence test results in a smaller risk that parental rights will be erroneously curtailed or even terminated, but a greater risk that the child, as a result of factual error, will be forced to remain in or return to a hostile, if not dangerous, family and home environment. *See Hernandez v. State ex rel. Arizona Department of Economic Security* (1975) 23 Ariz.App. 32, 530 P.2d 389. We here decide that if factual error is to be made, that it be in the best interests of the child as perceived by the trial court.

 The entire legislative scheme of child neglect statutes is designed to ensure the safety and well being of children. We do not believe a parent's due process rights mandate burdening the State with a standard of proof which might render meaningless the State's efforts to curtail child abuse or neglect. *Custody of a Minor* (1979) Mass., 393 N.E.2d 379. The preponderance of the evidence standard correctly was applied by the trial court.

Judgment affirmed.

HOFFMAN, J. (participating by designation), concurs in result.

SHIELDS, J., concurs.

ion as to the constitutionality of Iowa's summary removal procedures, § 232.7, for they are not before it. *Cf.* Consent Order entered

in *Ives v. Jones*, Civil No. 75-0071-R (E.D. Va.1975)." 406 F.Supp. 16, n.3.