IN the MATTER OF the TERMINATION OF PARENTAL RIGHTS TO A.M.K., a minor child:

R.D.K., Petitioner,†

v.

SHEBOYGAN COUNTY SOCIAL SERVICES DEPARTMENT, Respondent.

Court of Appeals

*No. 80–1869. Argued July 29, 1981.— Decided October 7, 1981.*
(Also reported in 312 N.W.2d 840.)

† Petition to review denied.

92

For the petitioner there was a brief by *Jack E. Schairer,* senior assistant state public defender. Oral argument by *Jack E. Schairer.*

For the respondent there was a brief by *L. Edward Stengel,* district attorney, and *Cornell DeGrothy,* assistant district attorney, of Sheboygan. Oral argument by *James W. Frisch,* assistant district attorney, of Sheboygan.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J.   This is an  appeal from an order denying a motion to vacate an order terminating appellant Mr. K.'s parental rights to his six year old son. On appeal, Mr. K. argues that sec. 48.40 (2) (b) and (d), Stats. (1977),[1] is void for vagueness, that due process required that less restrictive alternatives to termination should have been considered, that an improper standard of proof was applied and that the trial court abused its discretion. Finding no such statutory or procedural infirmities, we affirm the trial court's decision.

On March 9, 1979, appellant Mr. K. was convicted of the second-degree murder of his wife, K.A.K., and was sentenced to eighteen years in prison. In August 1979,

---

[1] The statute has since been amended. *See* note 2, *infra.*

the Sheboygan County Department of Social Services (DSS) filed a petition in the circuit court for termination of Mr. K.'s parental rights. The child, A.M.K., had been placed in DSS custody by court order shortly after his mother's death. Mr. K. had agreed before the termination hearing to consent to his son's adoption only if custody were to go to Mr. and Mrs. G., his aunt and uncle.

At the termination hearing, testimony was heard from Mr. K., Mr. and Mrs. G., two police officers who investigated a battery committed by Mr. K. upon his wife five months before her murder, a psychiatrist who examined the child and a representative from DSS.

On March 10, 1980, Mr. K.'s parental rights were terminated based on secs. 48.40(2)(b) and (d), Stats.[2]

---

[2] This statute was amended by the legislature in ch. 330, Laws of Wisconsin, 1979, to read:

48.415 Grounds for involuntary termination of parental rights. At the fact-finding hearing the court may make a finding that grounds exist for the termination of parental rights. Grounds for termination of parental rights shall be one of the following:

(1) ABANDONMENT. (a) Abandonment may be established by a showing that:

1. The child has been left without provision for its care or support, the petitioner has investigated the circumstances surrounding the matter and for 60 days the petitioner has been unable to find either parent;

2. The child has been placed, or continued in a placement, outside the parent's home by a court order containing the notice required by s. 48.356(2) and the parent has failed to visit or communicate with the child for a period of 6 months or longer; or

3. The child has been left by the parent with a relative or other person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of one year or longer.

(b) Incidental contact between parent and child shall not preclude the court from finding that the parent has failed to visit or communicate with the child under par. (a) 2 or 3. The time periods under par. (a) 2 or 3 shall not include any periods during which the parent has been prohibited by judicial order from visiting or communicating with the child.

48.40 Grounds for termination of parental rights. The court may, upon petition, terminate all rights of parents to a minor in any of the following cases:

. . .

(2) If it finds that one or more of the following conditions exist:

. . .

(b) That the parents have substantially or continuously or repeatedly refused or neglected or *are unable for*

(c) A showing under par. (a) that abandonment has occurred may be rebutted by other evidence that the parent has not disassociated himself or herself from the child or relinquished responsibility for the child's care and well-being.

(2) CONTINUING NEED OF PROTECTION OR SERVICES. Continuing need of protection or services may be established by a showing that the child has been adjudged to be in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345, 48.357, 48.363 or 48.365 containing the notice required by s. 48.356 (2), that the agency responsible for the care of the child and the family has made a diligent effort to provide the services required by the court, and:

(a) The child has been outside the home for a cumulative total period of one year or longer pursuant to such orders and the parent has substantially neglected or wilfully refused to remedy the conditions which resulted in the removal of the child from the home; or

(b) The child has been outside the home for a cumulative total period of 2 years or longer pursuant to such orders, the parent has been unable to remedy the conditions which resulted in the removal of the child from the home and there is a substantial likelihood that the parent will not be able to remedy these conditions in the future.

(3) CONTINUING PARENTAL DISABILITY. Continuing parental disability may be established by a showing that:

(a) The parent is presently, and for a cumulative total period of at least 2 years within the 5 years immediately prior to the filing of the petition has been, an inpatient at one or more hospitals as defined in s. 50.33(1)(a), (b) or (c), licensed treatment facilities as defined in s. 51.01(2) or state treatment facilities as defined in s. 51.01(15) on account of mental illness as defined in s. 51.01(13)(a) or (b) or developmental disability as defined in s. 55.01(2) or (5);

*a prolonged indeterminate period to give the minor the
parental care and protection necessary for his health,
morals or well-being;* or

. . .

(d) *That the parents are unfit* by reason of debauch-
ery, habitual use of intoxicating liquor or narcotic drugs,
or repeated lewd or lascivious behavior or conviction and
*confinement for a felony* (including hospitalization with-
in the sex deviate statutes), *which conduct or status is
found by the court to be likely to be detrimental to the
health, morals or the best interests of the minor;* . . . .
[Emphasis added.]

(b) The condition of the parent is likely to continue indefinitely;
and

(c) The child is not being provided with adequate care by a
relative who has legal custody of the child, or by a parent or a
guardian.

(4) CONTINUING DENIAL OF VISITATION RIGHTS. Con-
tinuing denial of visitation rights may be established by a showing
that:

(a) The parent has been denied visitation rights by court order
in an action affecting marriage;

(b) At least 2 years have elapsed since the order denying visita-
tion rights was issued and the court has not subsequently modified
its order so as to permit visitation rights; and

(c) The parent would not be entitled to visitation rights if he
or she were to seek such rights at the time the petition for termi-
nation of parental rights is filed.

(5) REPEATED ABUSE. Repeated abuse may be established
by a showing that on more than one occasion the parent has
caused death or injury to a minor or minors living in the parent's
household resulting in 2 or more separate felony convictions.

(6) FAILURE TO ASSUME PARENTAL RESPONSIBILITY.
(a) Failure to assume parental responsibility may be established
by a showing that a child has been born out of wedlock, not sub-
sequently legitimated or adopted, that paternity was not adjudi-
cated prior to the filing of the petition for termination of parental
rights and:

1. The person or persons who may be the father of the child
have been given notice under s. 48.42 but have failed to appear or
otherwise submit to the jurisdiction of the court and that such
person or persons have never had a substantial parental relation-
ship with the child; or

Further facts will be given as necessary.

Mr. K. appeals from this order on five bases:

(1) Section 48.40(2)(b) and (d), Stats., is unconstitutionally vague.

(2) The trial court failed to examine less restrictive alternatives to termination.

(3) Equal protection requires that the standard of proof comport with that required by other ch. 48 proceedings.

(4) Due process requires that the standard of proof should have been "beyond a reasonable doubt."

(5) The trial court abused its discretion.

## I. VAGUENESS OF THE STATUTE

Mr. K. first argues that subsections (2)(b) and (d) of sec. 48.40, Stats.,[3] are void for vagueness under the standard set forth in *Alsager v. District Court*, 406 F. Supp. 10 (S.D. Iowa 1975), *aff'd* 545 F.2d 1137 (8th Cir.

---

2. That although paternity to the child has been adjudicated under s. 48.423, the father did not establish a substantial parental relationship with the child prior to the adjudication of paternity although the father had reason to believe that he was the father of the child and had an opportunity to establish a substantial parental relationship with the child.

(b) In this subsection, "substantial parental relationship" means the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child. In evaluating whether the person has had a substantial parental relationship with the child, the court may consider such factors, including, but not limited to, whether the person has ever expressed concern for or interest in the support, care or well-being of the child or the mother during her pregnancy and whether the person has neglected or refused to provide care or support even though the person had the opportunity and ability to do so.

[3] Both the argument outline and the argument subheading of Mr. K.'s appellate briefs indicate that the constitutionality of only sec. 48.40(2)(b), Stats., is challenged. However, the argument itself indicates that (2)(d) is challenged as well.

1976).[4] There, the Alsagers had their parental rights terminated based on neglect and arising out of numerous complaints from neighbors concerning the Alsager children's conduct. The Alsagers challenged the constitutionality of sec. 232.41(2)(b) and (d), Code of Iowa:

The court may upon petition terminate the relationship between parent and child:

. . . .

2. If the court finds that one or more of the following conditions exist:

. . . .

b. That the parents have substantially and continuously or repeatedly refused to give the child necessary parental care and protection.

. . . .

d. That the parents are unfit by reason of debauchery, intoxication, habitual use of narcotic drugs, repeated lewd and lascivious behavior, or other conduct found by the court likely to be detrimental to the physical or mental health or morals of the child.

We find both the facts and the statute applied in *Alsager* to be sufficiently distinguishable from those at hand.

First, as the district court found, the conduct of the Alsagers, in allowing their children to behave so that neighbors would complain, was not such as to put them on notice that their parental rights might be in jeopardy, *Alsager*, 406 F. Supp at 18. We cannot agree that Mr. K.'s conduct was similarly ambiguous. As the trial judge pointed out in the decision, Mr. K.'s criminal record indicates that he has spent many years in both juvenile and criminal institutions for crimes ranging from "grand theft to sexual intercourse with a minor, battery to his wife, and second-degree murder." The murder of a child's mother is quite a different matter from the tolera-

---

[4] The affirmance, however, was on the basis of procedural due process. The vagueness question, while labeled "serious," was not passed upon.

tion of children's conduct which results in complaints from neighbors. While the Alsagers' conduct put them at the outermost boundaries of the Iowa termination statute, Mr. K.'s conduct here fell well within the foreseeable and expectable boundaries of the Wisconsin termination statute. Where conduct is "hard core," the appellant has no standing to challenge the statute for vagueness. *Herzbrun v. Milwaukee County,* 504 F.2d 1189, 1193 (7th Cir. 1974).

Moreover, both provisions of the applied Wisconsin statute differ significantly from the Iowa statute applied in *Alsager.* Section 48.40(2)(b) contains the following phrase not found in Iowa sec. 232.41(2)(b) : "[that the parents] are unable for a prolonged indeterminate period [to give the minor the parental care and protection . . . .]" It is clear from the language in the trial court's decision that inability to care for the child, and not refusal or neglect, was the touchstone: "It is obvious that [Mr. K.] cannot meet his parental responsibilities to his minor son on the basis he has been convicted of second-degree murder of the son's mother and sentenced to eighteen years in the State Prison."

Similarly, sec. 48.40(2)(d), Stats., contains a phrase not included in Iowa sec. 232.41(2)(d) : "[that the parents are unfit by reason of] conviction and confinement for a felony [which conduct or status is found by the court to be likely to be detrimental to the health, morals or the best interests of the minor]." Our statute requires that felony conviction and confinement must be found before the trial court examines detrimental conduct. Iowa's statute does not. Again, *Alsager* is inapposite.

Turning to a constitutional analysis of our statute, we cannot find that sec. 48.40(2)(b) and (d), Stats., is defective for vagueness. *Grayned v. City of Rockford,* 408 U.S. 104, 108–09 (1972), states that vague statutes carry three dangers: the absence of fair warning, the imper-

missible delegation of discretion, and the undue inhibition of the legitimate exercise of a constitutional right. We find none of these applies to sec. 48.40 (2) (b) and (d), Stats., as applied here.

## A. Absence of Fair Warning

It can hardly be seriously argued that a statute which provides for termination in the event that a parent is "unable for a prolonged indeterminate period" to care for a child does not give notice to a parent sentenced to eighteen years in prison. The same may be said for the provision in (2) (d), "conviction or confinement for a felony . . . , which conduct or status is found by the court to be likely to be detrimental to the health, morals or the best interests of the minor . . . ." Common sense dictates that one confined to prison for the second-degree murder of the minor's mother has clear notice from the face of the statute that his parental rights may be jeopardized.

## B. Impermissible Delegation of Discretion

Our statute, as applied here, provides substantial objective guidelines for trial courts to follow. Under sec. 48.40 (2) (b), a trial judge must determine "a prolonged indeterminate period" of time. Here, by any standard, eighteen years may be said to be prolonged, especially since the child will be twenty-six years old at the end of that time. Similarly, subsection (d) requires a finding of both a felony conviction *and* detrimental conduct or status. This clearly leaves *some* discretion with the trial court to determine what constitutes a detriment, but the antecedent objective determination of a felony conviction serves to limit the discretion exercised by the trial court.[5]

---

[5] Since such is not at issue here, we decline to hold upon whether, for example, debauchery and detrimental conduct or status is impermissibly vague. "It is a matter of common occurrence, in-

## C. Inhibition of Exercise of Constitutional Rights

This factor is the least pertinent to our analysis. Vague statutes have been said to lead citizens to "steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned,* 408 U.S. at 109. Here, it can hardly be said that Mr. K.'s conduct steered wide of the unlawful zone. Moreover, we do not see that either statutory provision at issue here would tend to chill the average parent's exercise of his or her freedom to engage in lawful conduct.

Therefore, we find that sec. 48.40 (2) (b) and (d), Stats., as applied, is not void for vagueness.[6]

## II. "LEAST RESTRICTIVE ALTERNATIVE"

Mr. K. next argues that due process requires the trial court, before terminating parental rights, to consider and reject less drastic alternatives.

We believe that an examination of alternate remedies is implicit in a finding of unfitness. Our supreme court has held in *In re J.L.W.,* 102 Wis. 2d 118, 136, 306 N.W.2d 46, 55 (1981), that due process in termination cases is

deed, it is almost the undeviating rule of the courts, both state and Federal—not to decide constitutional questions [of the validity of a State Act] until the necessity for such decision arises in the record before the court." *Arkansas Fuel Oil Co. v. Louisiana ex rel. Muslow,* 304 U.S. 197, 202 (1938).

[6] As a corollary to his vagueness argument, Mr. K. forwards a due process argument based on *Roe v. Conn,* 417 F. Supp. 769 (M.D. Ala. 1976), which we find inapposite. The court in *Roe* found a *summary* removal statute unconstitutional. The statute allowed the state, in emergencies, to remove a child from a parent without prior notice or a hearing. On appeal, Mr. K. does not argue that he was not given a hearing. Further, the "notice" in *Roe* is notice of termination itself, rather than the notice of grounds for termination, which is what sec. 48.40, Stats., provides.

satisfied where a parent is found unfit.[7] Here, the trial judge made a definite finding of unfitness based upon Mr. K.'s long term incarceration, his history of violent crimes, and his inability to meet foreseeable parental responsibilities, as well as the child's right to emotional security and freedom from neglect.

The standards for a finding of unfitness in Wisconsin have long deferred, as much as possible, to parental rights. When unfitness *is* found, however, it must be based upon most substantial grounds. The standards for unfitness have long been stringent. To support a finding of unfitness,

it must appear that the [parent] has "so conducted himself, or shown himself to be a person of such description, or is placed in such a position, as to render it not merely better for the children, *but essential to their safety or to their welfare,* in some very serious and important respect, that his rights should be treated as lost or suspended,—should be superseded or interfered with." [Emphasis added.]

*Lemmin v. Lorfeld,* 107 Wis. 264, 266, 83 N.W. 359, 360 (1900). It is evident, then, that a finding of unfitness is a determination that further contact between parent and child will be seriously detrimental to the child. Any consideration of less restrictive alternatives subsequent to a finding of unfitness, therefore, would be an empty exercise. We do not hold, however, that less restrictive alternatives are not pertinent in termination proceedings; we hold only that, once unfitness has been found, alternatives which would continue parental rights are rendered moot.

Mr. K. further contends that the state has the burden to propose all reasonable alternatives less restrictive than

---

[7] We note that, while the substantive criteria of the termination statute have been changed by the legislature, the holding of *J.L.W.* applies equally to new and old statutes.

termination. We refuse to put such a burden on the state. Here, the trial judge considered and rejected the only alternative posited by Mr. K., that he would voluntarily surrender his parental rights if his aunt and uncle were given custody. If the trial court considers those less restrictive alternatives presented to it by interested parties and finds them wanting, the trial court's duty is done.[8] We cannot say as a matter of law that due process is not satisfied.

In light of *J.L.W.*, we cannot hold that due process requires more than responsible determinations of unfitness and the best interests of the child, qualifications which we find were met here.

## III. BURDEN OF PROOF

Mr. K. argues that the application of a "clear and convincing evidence" standard of proof in termination proceedings violates constitutional equal protection principles under the fourteenth amendment to the United States Constitution because some other ch. 48 proceedings require the standard of "beyond a reasonable doubt." The new statute provides for the highest standard of proof only where the child is alleged to be delinquent. The statute in force at the time of this termination hearing, however, also excepted other children's code actions as well.[9]

---

[8] *See In re Brooks*, 618 P.2d 814, 822 (1980).

[9] Section 48.31(1), Stats. (1977), which applied at the time of this action, provided:

48.31 Fact-finding hearing. (1) In this section, "fact-finding hearing" means a hearing to determine if the allegations of the petition are supported beyond a reasonable doubt except for petitions under s. 48.125 or 48.13(3), (7), (10) and (11) and petitions to terminate parental rights, which shall be proved by clear and convincing evidence.

We do not see, however, how an equal protection argument is appropriate here. The equal protection clause of the fourteenth amendment "declares that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,'—meaning, of course, the protection of laws applying equally to all *in the same situation."* (Emphasis added.) *Kentucky Finance Corp. v. Paramont Auto Exchange Corp.,* 262 U.S. 544, 550 (1923). Both the old and new versions of the statute in question, sec. 48.31(1), have treated those parents faced with involuntary termination of their parental rights as a unified group subject to a single standard of proof. At no time in question has either version of the statute provided for differing burdens of proof for parents within this classification. We find it irrelevant to the rights of these parents that parents who are subject to other than involuntary termination may have different burdens of proof. It is no violation of equal protection to treat different classes differently.

---

Under that statute, the "beyond a reasonable doubt" standard was applied where children were alleged to have violated civil laws or ordinances (sec. 48.125) or where children were in need of protection or services and were also either the victim of sexual or physical injury or abuse (sec. 48.13(3)); habitually truant (sec. 48.13(7)); neglected (sec. 48.13(10)); or suffering emotional damage (sec. 48.13(11)).

The current statute,
48.31 Fact-finding hearing. (1) In this section, "fact-finding hearing" means a hearing to determine if the allegations of a petition under s. 48.12 or 48.13(12) are supported beyond a reasonable doubt or a hearing to determine if the allegations in a petition or citation under s. 48.125 or 48.13(1) to (11) or a petition to terminate parental rights are proved by clear and convincing evidence[,]

provides for the higher standard of proof only for children alleged to be delinquent (sec. 48.12) or children in need of protection or services who have committed a delinquent act (sec. 48.13(12)).

## IV.  DUE  PROCESS

What is relevant, though, is Mr. K.'s correlative argument that, given the fundamental right involved, the burden of proof for termination of parental rights should be the highest burden possible. We begin by noting that judicial review of all legislation is subject to the presumption of constitutionality. *Sigma Tau Gamma Fraternity House v. City of Menomonie,* 93 Wis. 2d 392, 414, 288 N.W.2d 85, 95 (1980) ; *Mack v. State,* 93 Wis. 2d 287, 297, 286 N.W.2d 563, 568 (1980). One attacking a statute on constitutional grounds has the burden of proving that it is unconstitutional beyond a reasonable doubt. *Wisconsin Bingo Supply & Equipment Co. v. Wisconsin Bingo Control Board,* 88 Wis. 2d 293, 301, 276 N.W.2d 716, 719 (1979) ; *Moedern v. McGinnis,* 70 Wis. 2d 1056, 1068, 236 N.W.2d 240, 246 (1975), *quoting State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 46, 205 N.W.2d 784, 792 (1973).

■

Initially, we accept Mr. K.'s contention that there is a fundamental right to establish a home and to raise children without governmental interference. This right has been recognized in a wide variety of contexts by the United States Supreme Court, the federal courts and the Wisconsin Supreme Court.[10]  While that right is not

---

[10] *See, e.g., Quilloin v. Walcott,* 434 U.S. 246, 255, *rehearing denied* 435 U.S. 918 (1978); *Smith v. Organization of Foster Families,* 431 U.S. 816, 842–43 (1977); *Wisconsin v. Yoder,* 406 U.S. 205, 232–33 (1972); *Griswold v. Connecticut,* 381 U.S. 479, 482 (1965); *Skinner v. Oklahoma,* 316 U.S. 535, 541 (1942); *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923); *Baird v. Lynch,* 390 F. Supp. 740, 751 (W.D. Wis. 1974); *Babbitz v. McCann,* 310 F. Supp. 293, 299 (E.D. Wis. 1970), *appeal dismissed* 400 U.S. 1 (1970); *In re Alley,* 174 Wis. 85, 88, 182 N.W. 360, 361 (1921); Note, 1978 Wis. L. Rev. 510, 527–28.

absolute,[11] we are persuaded that it is a basic right with which the state may not interfere absent a compelling reason for doing so and that the interest in "maintaining the integrity of [a] family unit" is sufficient to rise to the level of a fundamental right which may not be invaded by the state on a mere rational basis test. *Alsager,* 406 F. Supp. at 16.

The judicial power to terminate parental rights is an awesome one. That often echoed sentiment was recently expressed in a dissenting opinion from the Wisconsin Supreme Court.[12] As testimony to this recognition of fundamental interest, the New Hampshire Supreme Court in *State v. Robert H.,* 118 N.H. 713, 393 A.2d 1387 (1978), invalidated the clear and convincing burden specified in that state's children's code and held that the highest standard was required under the New Hampshire Constitution. The court said:

The loss of one's children can be viewed as a sanction more severe than imprisonment. . . . The permanent termination of the rights of parents over their children is even more final than involuntary commitment or delinquency proceedings. [Citations omitted.]

*Robert H.,* 118 N.H. at 716, 393 A.2d at 1389.

The holding in that case, however, is against the current trend. Courts in four other states have upheld lesser burdens of proof against constitutional due process challenges. In *State ex rel. Juvenile Department v. K.M.S.,* 26 Or. App. 219, 552 P.2d 578 (1976), the Oregon Court of Appeals found no constitutional deficiency in "a pre-

---

[11] *Carey v. Population Services Int'l.,* 431 U.S. 678, 685–86 (1977); *Prince v. Massachusetts,* 321 U.S. 158, 166 (1944), *rehearing denied; Sims v. Waln,* 536 F.2d 686, 689 (6th Cir. 1976), *cert. denied* 431 U.S. 903 (1977); *Newborn v. Morrison,* 440 F. Supp. 623, 626 (S.D. Ill. 1977).

[12] *See In re Termination of Parental Rights to Kegel,* 85 Wis. 2d 574, 589, 271 N.W.2d 114, 121 (1978) (Abrahamson, J., dissenting).

ponderance of competent evidence" burden of proof. The court emphasized the importance of the governmental function to protect the best interests of the child and the stringency of the statutory grounds for termination.

A preponderance standard was also upheld in *Hernandez v. State ex rel. Arizona Department of Economic Security*, 23 Ariz. App. 32, 530 P.2d 389 (1975). The Arizona Court of Appeals noted that it was required to balance competing interests of parent and child, including the right of the child to be with his natural parents and siblings. *Hernandez*, 23 Ariz. App. at 35, 530 P.2d at 392. It also recognized that "for some parents the loss of a child through this legal process can be as serious as imprisonment in a criminal case." *Id.* Its holding, however, looked to the purpose served by assigning a particular burden of proof to a particular type of case. Noting Justice Harlan's concurring opinion in *In re Winship*, 397 U.S. 358, 369–70 (1970), the Arizona court stated that "the standard of proof should reflect an assessment of the comparative social disutility which is inflicted upon either party to the lawsuit when the factfinder is wrong in his factual conclusions," *Hernandez*, 23 Ariz. App. at 35, 530 P.2d at 392. Further, the court discussed the competing interests of parent and child:

In a termination proceeding an error in factual determination can result in the termination of the parental relationship when such termination is not justified. On the other hand it can result in the failure to terminate when the relationship should be ended. The standard of proof is going to affect the relative frequency of those two erroneous outcomes. The standard of "a preponderance of the evidence" rather than "clear and convincing evidence" would result in a greater risk than parental rights would be erroneously severed, but a smaller risk than a child, as a result of a factual error, would be forced to return to a hostile, if not dangerous, family situation or spend his childhood in a series of temporary foster homes. Comparing the social disutility of these

two erroneous outcomes, we do not believe that one can make a *fundamental* value determination that the erroneous severance of parental rights, vis-a-vis the erroneous failure to sever, constitutionally requires a higher burden of proof. [Emphasis in original.]

*Hernandez*, 23 Ariz. App. at 36, 530 P.2d at 393.

The supreme court of South Dakota followed *Hernandez* in approving that state's preponderance standard in *In re N.J.W.*, 273 N.W.2d 134 (S. Dak. 1978),[13] quoting the above language with approval. In addition, the court concluded:

This is not a situation, as in a criminal case, where the conflict is between an individual and the state. In such a case, the rights of the individual are paramount to those of the state and an extremely high standard of proof, i.e. beyond a reasonable doubt, is indeed proper and required. However, in the case before us, the conflict is essentially between the rights of the parents and those of the children. In this situation, the application of a balancing test is eminently logical and necessarily fair. Therefore, the preponderance of the evidence standard is proper and constitutional.

*N.J.W.*, 273 N.W.2d at 140.

The California Court of Appeals found "no constitutional barriers" to the use of a clear and convincing standard under an amended statute which had formerly required proof beyond a reasonable doubt in termination cases. The court flatly stated that the highest burden "is required only in those instances where there is a deprivation of liberty and a moral stigma attaches." *In re David E.*, 85 Cal. App. 3d 632, 635, 150 Cal. Rptr. 790, 791 (1978). The difficulty experienced by the California legislature in determining which burden of proof to impose is illustrated by amendments lowering, raising, and again lowering the standard in the space of two years. *See In*

---

[13] The Supreme Court of South Dakota reaffirmed this position in *In re K.B.*, 302 N.W.2d 410 (1981).

*re Lynna B.*, 92 Cal. App. 3d 682, 694, 155 Cal. Rptr. 256, 261, n. 2 (1979).

These cases illustrate the difficulty of balancing the many interests at stake in termination proceedings. Characterizing termination proceedings as a strictly parent-versus-child proposition presumes that the state, which purports to act on behalf of the child in initiating the proceedings, is correct in concluding that the drastic remedy of termination is necessary to protect the child from significant harm. But, this reasoning overlooks the child's competing interests in maintaining the natural bonds whenever possible, as noted in *Hernandez*, as opposed to his or her interest in escaping an intolerable, hopeless family situation. The interest of the public similarly fluctuates between its interest in assuring as wholesome a developmental setting as it can for every child and its interest in "preserving the unity of the family whenever possible." Sec. 48.01(1) (b), Stats. The tension between these several interests is clear and immediate.

The Wisconsin legislature has placed this state in the majority of jurisdictions which fix the state's burden of proof at something less than the highest standard of beyond a reasonable doubt in termination proceedings.[14] All but one of the courts considering the issue have upheld a lower standard against constitutional challenge, and most of these have upheld a lower standard than Wisconsin requires.

It is also apparent that termination proceedings do not lend themselves to the same degree of certainty as crimi-

---

[14] Our research reveals that at least twenty states employ a clear and convincing burden; twelve authorize termination on a preponderance of the evidence; seventeen fail to specify a burden of proof or refer only to "the best interests of the child." Only New Hampshire, following the supreme court's decision in *State v. Robert H.*, 118 N.H. 713, 393 A.2d 1387 (1978), employs the highest burden of beyond a reasonable doubt.

nal cases where the factual issues involve specific instances of alleged past conduct. Questions of whether a criminal defendant performed a certain act on a given occasion with the requisite intent are often difficult to resolve. The question of whether a given parent is "unable for a prolonged indeterminate time" to provide necessary care or has "substantially and continuously" neglected to provide that care are infinitely more so. The latter cases involve a more subtle reasoning process and frequently a more predictive judgment and wisdom on the part of the fact finder than do cases which typically require the highest burden of proof.

We hold that the correct burden of proof was applied in the instant case and that the appellant's due process rights were not violated thereby.

## V. ABUSE OF DISCRETION

Mr. K. next argues that the trial court abused its discretion by failing to demonstrate a compelling state interest in terminating his parental rights and by failing to give sufficient credence to the guardian ad litem's report. We find no abuse of discretion.

Our legislature, in the children's code, ch. 48, Stats., has made it clear that "[t]he best interests of the child shall always be of paramount consideration . . . ." Sec. 48.01(2), Stats. It is clear, then, that the continuing welfare of the state's children is a "compelling state interest."

Two recent pronouncements from our supreme court indicate that, to fully protect parents' fundamental rights in termination cases, two conclusions must be drawn by the trial court from sufficient evidence: that the termination order is in the best interests of the child (*In re*

*T.R.M.*, 100 Wis. 2d 681, 687, 303 N.W.2d 581, 583 (1981)), and that the parent is unfit (*In re J.L.W.*, 102 Wis. 2d 118, 136, 306 N.W.2d 46, 55 (1981)). Here, the trial court made both findings explicit in its decision: unfitness was founded upon Mr. K.'s "potentially long prison sentence," his history of violence, his inability to care for his son in the foreseeable future and the psychological trauma he has caused his son; and the best interests of the child were founded upon the child's rights to emotional security, a stable family relationship, a sound environment, as well as good physical care, adequate food, shelter and clothing. We decline to hold that the trial court's failure to specifically label the state's compelling interest is constitutional error.

Finally, Mr. K. argues that the guardian ad litem's report was "lightly dismissed" by the trial court and that this constitutes an abuse of discretion. Our reading of the decision, however, revealed no cavalier attitude on the part of the trial court. Rather, the guardian ad litem's report was ambiguous; it did not advocate termination, but it did suggest that Mr. K. "should never have custody of his child," that "[o]utside interference with A.M.K.'s development by A.M.K.'s father or relatives must be thwarted and closely regulated by this court . . . ," and that "A.M.K. must be isolated as much as possible from any influence by his father, especially during his young and tender years." The trial court's understanding of this report as one which sought to impose a *de facto* termination (without labeling it as such) is no abuse of discretion.

*By the Court.*—Order affirmed.